**NATIONAL LABOR RELATIONS BOARD**
**v. KINGSTON CAKE CO., Inc. et al.**

No. 10427.

United States Court of Appeals
Third Circuit.
Argued May 21, 1951.

Filed Sept. 5, 1951.

Julius Topol, Washington, D. C. (George J. Bott, Gen. Counsel, David P. Findling, Associate Gen. Counsel, A. Norman Somers, Asst. Gen. Counsel, Marcel Mallet-Prevost and Mark C. Curran, all of Washington, D. C., on the brief), for National Labor Relations Board.

Albert N. Danoff, Wilkes-Barre, Pa. (R. Lawrence Coughlin, Wilkes-Barre, Pa., on the brief), for Kingston Mutual Assn.

Max Rosenn, Wilkes-Barre, Pa. (Harold Rosenn, Solomon Lubin, all of Wilkes-Barre, Pa., on the brief), for Kingston Cake Co., Inc., respondents.

Before GOODRICH, STALEY and HASTIE, Circuit Judges.

HASTIE, Circuit Judge.

The National Labor Relations Board has ordered the Kingston Cake Company to reinstate and make financially whole its former employee, Franklin Williams. The Board has also ordered the Kingston Mutual Association, a labor union of Kingston's employees, jointly with the employer to make Williams whole. Pursuant to Section 10(e) of the National Labor Relations Act,[1] the Board has petitioned us to enforce these orders.

Whether the Board is entitled to the relief which it prays depends first on whether the Company and the Association have been guilty of unfair labor practices with respect to Williams. The relevant facts follow. Since 1946, there had been competition between the Association and the Bakery and Confectionery Workers, AFL, to represent the Company's employees. The Association had been consistently successful in this competition; and after having won a representation election in February,

---

1. 61 Stat. 148, Act June 23, 1947, 29 U.S.C.A. § 160(e) (Supp.1950).

1949, had executed a two year contract with the company. Among other things, the contract contained a union security clause, in the following terms:

"3. Within the limits permitted by Federal and Commonwealth of Pennsylvania laws, the employer shall require as a condition of employment for employees, membership in the Association [Union] * * * and will deduct, collect, or assist in collecting from the wages of employees when authorized * * * any dues, fees, or assessments payable to the association within the authority and procedure set forth in the Federal or Commonwealth of Pennsylvania statutes * * *.

"4. * * * The employer shall discharge an employee when expelled from the association within the limits permitted by law."

On March 24, 1949, and pursuant to the petition of the Association, the Board conducted a union-security election, at which a substantial majority of the employees voted to authorize the Association to bargain for a union shop. The results of the election were not certified until May 16, 1949.

Williams, the employee whose discharge is here in issue, was an employee of Kingston from 1941 until May 9, 1946, except for a brief interval spent principally in military service. Although he had supported the Bakery Workers union in its bids for the employees' support, Williams was an officer of the Association at the beginning of 1949. When the representation election was held in February, 1949, Williams campaigned for the Bakery Workers. In addition, as an officer of the Association, he refused to execute the non-communist affidavit required of all officers of unions seeking NLRB certification. He stated that this was for the explicit purpose of preventing the Association from getting on the ballot, with the hope that it would thereby be destroyed.

A few days later, the Association suspended Williams from its Employee Board and filed charges and set hearings against him for violation of its by-laws. Before the hearing was held, Williams offered an executed non-communist affidavit to the secretary-treasurer of the Association. This was accepted even though the secretary-treasurer pointed out to Williams that it was on an old and superseded form and therefore ineffective. The secretary-treasurer did not ask for another affidavit, nor did Williams then offer to execute another.

An Association hearing was held on April 12, at which its employee Board voted to expel Williams from membership in the Association even though he offered then to sign the form of affidavit currently in use.

On April 19, 1949, the Association by letter, notified Williams and the president of the Company that Williams had been expelled from the Association. The Company made no response to the letter; and on April 25, the Association attorney wrote the Company president another letter, as follows: " * * * Having notified you by letter of April 19, 1949, of the action taken by the Kingston Mutual Association in the case of Mr. Frank Williams, I now wish to direct your attention to Article II, Paragraph 4, of the Labor Agreement presently in effect between the Kingston Mutual Association and the Kingston Cake Company, Inc. and request that you take appropriate steps in line therewith."

On April 26, the Company replied to this letter through its counsel, as follows: " * * * I am of the opinion that Kingston Cake Company cannot take any action under Article II, paragraph 4 of the agreement between it and the Union, unless the membership of Mr. Williams is terminated for failure to tender periodic dues and initiation fees as required by the Association."

On April 29, the Association counsel replied to the company:

"I have your letter of April 26, 1949 and with reference thereto, I wish to advise that in addition to the failure of Mr. Williams to sign and execute a non-communist affidavit, as required under the Labor Management Relations Act of 1947, he also failed to tender or pay the nominal dues as required for membership in the Kingston Mutual Association for the month of March, 1949. "It is the belief of the officers of the Kingston Mutual Association

that by his failure to pay or tender the periodic dues, his membership in the Association was terminated, and therefore the employer is required under the terms of the labor agreement presently in effect between the Kingston Mutual Association and the Kingston Cake Company, Inc., to dismiss the said employee, Franklin Williams, from his employment with the Kingston Cake Company, Inc."

On May 9, 1949, the Company's Personnel Director, Miss Ehrhart, called Williams to the Company office, told him that he was discharged, and handed him the following letter:

"We regret to inform you that we are obliged to terminate your employment effective at the close of work today for the following reasons:

"1. We are informed that your membership in the Kingston Mutual Association has been terminated for your failure to sign a non-communist affidavit in connection with recent proceedings before the National Labor Relations Board, and your failure to pay or tender the periodic dues required by it. Under our agreement with the Kingston Mutual Association we are required therefore to sever your employment at once.

"2. Apart from your membership in the Association, your failure to sign the non-communist affidavit has caused considerable distress among the employees of the Company, and has been a source of so much agitation that the normal harmonious relations existing among them has been affected. Under such circumstances, we feel that you will find employment elsewhere happier."

There was evidence that the Company knew as early as the 19th of April that Williams was being expelled from the union because of his attitude in connection with the non-communist affidavit, and not because of his failure to pay dues. Personnel Director Ehrhart testified that on April 20, at a time when two of the Union officers were in her office, Williams entered her office and asked a clerk for a refund of the union dues deducted from his pay on April 16. When the clerk relayed this request to the Director and one of the union

officers, the latter remarked, "Well, he owes it, but let him have it". Ehrhart also testified that prior to Williams' coming into the office that day, she had received the union's letter of April 19, and had learned from the union officials that they had expelled Williams for failure to sign a non-communist affidavit.

The Board concluded that in discharging Williams the Company violated his rights under Sections 8(a) (3) and 8(a) (1) of the National Labor Relations Act and that by causing the Company to do so, the Association violated Sections 8(b) (2) and 8(b) (1) (A). It held that it was an unfair labor practice for the employer to discriminate in terms or conditions of employment on the basis of a union-security agreement prior to the date of Board certification of the results of the election; and that it was an unfair labor practice for the union to cause a discharge to be made thus prematurely. The Board then ordered reinstatement, and back pay from the company and Association. It now seeks a decree of enforcement.

The first objection to the enforcement of the order concerns a discrepancy between the unfair labor practice set out in the charge and that set out in the complaint. The charge against the company was filed June 27, 1949. In relevant part, it read as follows: "On or about May 9, 1949, it [the Company], by its officers, agents and employees, discharged Franklin Williams, an employee in the Cake Department, because of his membership and activities on behalf of the Bakery and Confectionery Workers International Union, Local 423, AFL. The company claims that this discharge was at the request of the Kingston Mutual Association, an independent labor union, and in accordance with the terms of a collective bargaining agreement in effect between the company and the said Kingston Mutual Association. Since said date, the company has refused and does now refuse to reemploy the said Franklin Williams."

The complaint, however, alleges: "Respondent Employer did discharge and did fail and refuse to reinstate Franklin Williams for non-membership in Respondent Union although and notwithstanding that

Respondent Employer had reasonable grounds for believing that membership in Respondent Union was denied or terminated for reasons other than the failure of Franklin Williams to tender the periodic dues and the initiation fees uniformly required as a condition of retaining membership in the Respondent Union."

There is little doubt that the complaint and the order of enforcement do not rely on one item of the charge, discrimination against Williams because of his membership in the Bakery Workers Union although another, "activities on behalf of" the Union certainly was the underlying cause of the non-membership in the Association asserted in the complaint. The vice of the objection, however, is that it misconceives the function of the charge. The purpose of the charge is not to define the issues to be tried with the precision that is sought normally in pleadings in law suits. The purpose of the charge is to give the Board a preliminary basis for determining whether to proceed in the investigation of the case. For this purpose, it is of course not essential that it be precise. Indeed, it would hardly be consistent with the general investigatory nature of the action on the charge to confine the subsequent complaint to its allegations. Kansas Milling Co. v. N.L.R.B., 10 Cir., 1950, 185 F.2d 413; Union Starch & Refining Co. v. N.L.R.B., 7 Cir., 1951, 186 F. 2d 1008; Consumers Power Co. v. N.L. R.B., 6 Cir., 1940, 113 F.2d 38; but cf. Joanna Cotton Mills Co. v. N.L.R.B., 4 Cir., 1949, 176 F.2d 749. Moreover, at the very least this charge puts the Company on notice that the employee challenges its basis for dismissing him.[2] We find a legally sufficient relationship between the subject matter of the charge and the allegations of the complaint.

The Company also objects to the conclusion that it was an unfair labor practice to rely on a union security agreement before the Board had certified that a majority of the employees had authorized negotiations for such agreement. The discharge took place on May 9, 1949, whereas the certification was not made until May 16. We agree with the Board that the statute requires the actual certification to be the determinative time, first, because the statute says so rather explicitly, and second, because we are furnished with no satisfactory standard to substitute for the time of certification itself.[3]

However, we do not agree with the further conclusion that it follows that reinstatement is an appropriate remedy for this formal defect. The Board's power to order reinstatement is couched in terms of effectuating the policies of the Act. 61 Stat. 147, Act June 23, 1947, 29 U.S.C.A. § 160(c). This underlying policy consideration should be controlling where it is plain that no essential injustice to the employee has resulted from the failure to await a certification formally confirmatory of what had already been done by the parties. A reasonable exercise of discretion here would have precluded a reinstatement predicated upon the fact that the employee was not technically subject to discharge until a week after he was in fact discharged, especially where the employer seems to have acted in good faith in supposing that he was subject to discharge. Cf. Southern Steamship Co. v. N.L.R.B., 1942, 316 U.S. 31, 62 S.Ct. 886, 86 L.Ed. 1246.

For this reason, we think the Board should have gone beyond this issue and should have considered the validity of the findings of the Trial Examiner that the discharge was improper without regard to technical prematurity of action. Section 8 (a) (3) (B) of the Act provides that a discrimination on the basis of a union se-

2. In this connection, the charge against the union filed at the same time does claim that the Union caused the Company "to discharge him on some ground other than his failure to tender the periodic dues and initiation fees uniformly required as a condition of acquiring or retaining membership in that labor organization."

3. This conclusion is consistent with the observations on certification made by the Supreme Court in Inland Empire District Council v. Millis, 1945, 325 U.S. 697, 65 S.Ct. 1316, 89 L.Ed. 1877; cf. Warehousemen's Union, Local 117 v. N. L. R. B., 1941, 74 App.D.C. 28, 121 F.2d 84.

curity agreement cannot be justified if the employer has "reasonable grounds for believing that membership was * * * terminated for reasons other than the failure of the employee to tender the periodic dues and the initiation fees uniformly required as a condition of acquiring * * * membership * * *." On this issue the Trial Examiner found "that Williams' alleged dues delinquency could not have been the basis for the Union's demand on the Company that he be discharged and, further, the Company was aware of this fact at the time." In its Decision and Order the Board does not adopt this finding. Rather the Board disclaims the necessity of passing on the validity of the Trial Examiner's findings on this aspect of the case.

We are unwilling to predicate judgment on this issue so long as the Board has not made findings upon it. In these circumstances, we will deny the petition for enforcement and remand the case to the Board without prejudice to reconsideration consistent with this opinion.