## NATIONAL LABOR RELATIONS BOARD v. KOBRITZ et al.

No. 4581.

United States Court of Appeals
First Circuit.

Dec. 17, 1951.

Arnold Ordman, Attorney, Washington, D. C. (George J. Bott, Gen. Counsel, David P. Findling, Asst. Gen. Counsel, A. Norman Somers, Asst. Gen. Counsel, and Ruth V. Russell, all of Washington, D. C., on brief), for petitioner.

Benjamin E. Gordon, Boston, Mass. (Gordon & Epstein, Boston, Mass., on brief), for respondent.

Before MAGRUDER, Chief Judge, and WOODBURY and HARTIGAN, Circuit Judges.

HARTIGAN, Circuit Judge.

The National Labor Relations Board pursuant to the National Labor Relations Act, as amended (61 Stat. 136, 29 U.S.C.A. § 151 et seq.), hereinafter called the Act, has petitioned this court for enforcement of its order against the respondent, Samuel J. Kobritz, d.b.a. Star Beef Company, Bangor, Maine. This court has jurisdiction under § 10(e) of the Act, as amended, 29 U.S.C.A. § 160(e).

The order directed the respondent to cease and desist from refusing to bargain collectively with Amalgamated Meat Cutters and Butcher Workmen, Local 385, AFL (hereinafter referred to as the "union") as the exclusive representative of all respondent's production and maintenance employees, including truck drivers and shipping employees, but excluding clerical employees, executives, guards, professional employees and supervisors as defined in the Act; from discouraging membership in said union or any other labor organization by discriminatory hiring and firing; from interfering with its employees' right to organize, form and join the union or any other labor organization and to bargain collectively, etc. The order also ordered the respondent to take certain affirmative action which would effectuate the policies of the Act.

The trial examiner's "Intermediate Report", dated May 4, 1950, gives a fair statement of the case and facts. They are in substance:

"Statement of the case.

"Upon charges and amended charges duly filed by Amalgamated Meat Cutters and Butcher Workmen, Local 385, AFL,

herein called the union, the General Counsel of the National Labor Relations Board, herein respectively called the General Counsel and the Board, by the Regional Director of the First Region, (Boston, Massachusetts) issued a complaint dated January 16, 1950, against Samuel J. Kobritz, d/b/a Star Beef Company, herein called the respondent, alleging that the respondent had engaged in and was engaging in unfair labor practices affecting commerce within the meaning of Section 8(a) (1) and (3) and Section 2(6) and (7) of the National Labor Relations Act, as amended, (Pub.Law 101, 80th Cong., 1st Session) herein called the Act. * * *

\* \* \* \* \* \*

"With respect to unfair labor practices the complaint, as issued, alleges in substance that the respondent: (1) on August 3, 1949, discharged employees Everett Moon and George Grant because of their activities on behalf of the Union; (2) on September 16, 1949, refused reinstatement to eight named employees [1] who, on August 15, had gone on strike because of the discriminatory discharges of Moon and Grant, although said eight employees had unconditionally requested reinstatement; (3) interrogated its employees concerning their union membership, threatened them with certain reprisals if the union successfully organized, and promised them benefits if they ceased their concerted activities; and (4) by these acts interfered with, restrained, and coerced its employees in the exercise of rights guaranteed by the Act.

"Thereafter the respondent filed its answer, dated January 27, 1950, denying the commission of the alleged unfair labor practices and denying that it is subject to the jurisdiction of the Board.

"Pursuant to notice, a hearing was held at Bangor, Maine, on February 7, 8, 9, and 10, 1950, before the undersigned Trial Examiner, duly designated by the Chief Trial Examiner. General Counsel and the respondent were represented by counsel, the union by international representatives. All parties participated in the hearing, and

were afforded full opportunity to be heard, to examine and cross-examine witnesses, and to introduce evidence bearing upon the issues.

"During the presentation of his case-in-chief, General Counsel moved to amend the complaint to allege further that the respondent had engaged in unfair labor practices within the meaning of Section 8(a) (1) and (5) of the Act by refusing to bargain collectively with the union and on and after August 1, 1949, although on and after July 26, 1949, the union represented a majority of its employees in a unit appropriate for the purpose of collective bargaining within the meaning of Section 9(b) of the Act. The motion was granted. Counsel for the respondent was informed that a motion for reasonable adjournment to meet the amended complaint would be entertained if made at the conclusion of General Counsel's case-in-chief. No motion for such adjournment was made. Thereafter a motion to amend the answer was granted; said amendment denying the 8(5) allegations.

\* \* \* \* \* \*

"Findings of fact.

"I. The Business of the Respondent.

"Samuel J. Kobritz, doing business as Star Beef Company, is engaged in the wholesale purchase and distribution of meat, provisions and produce, with principal place of business in Bangor, Maine. During 1949 the respondent purchased meats and allied products valued at $1,178,667.28 which were shipped to it by rail and truck from points outside the State of Maine. During the same period its purchases within the State of Maine totalled in value $318,412.43. Almost all of its meats and produce are distributed to retail markets in Maine, within a radius of 125 miles from Bangor.

"II. The organization involved.

"Amalgamated Meat Cutters and Butcher Workmen, Local 385, AFL, is a labor organization admitting to membership employees of the respondent.

"III. The unfair labor practices.

1. Donald Cobb, Millard Chase, Walter Gaudette, Eugene Crawford, Roger Warren, Frederick Arthers, Herbert Rowe, and Bernard Lucas.

"A. *Major events and issues.*[2]

"The present controversy arose out of organizational efforts begun by employee Everett Moon at the respondent's plant in the summer of 1949. In response to Moon's attempt to locate a union organizer, Michael J. Mahon, an international representative of the union, came to Bangor and called upon Moon on July 25. Mahon left a number of membership applications with the employee who, the next day at the plant, solicited signatures and gave some of the cards to employee George Grant for distribution by him.

"On July 26, Moon obtained signatures, including his own, upon 5 applications, Grant upon 3. At this time there were 12 employees in the unit claimed by General Counsel to be appropriate for purposes of collective bargaining.

"On Monday, August 1, Mahon called upon Samuel Kobritz, presented his card; introduced himself as a representative of the union, informed him that 'all of the boys had signed up with him,'[3] and asked for a contract. Kobritz declined. From this event stems the issue of refusal to bargain. (The record at p. 42 discloses that Kobritz's words were: 'He (Mahon) told me that the boys are all signed up with him now, and he wanted a contract from me.')

"Immediately after Mahon's visit, according to his own testimony, Kobritz proceeded to inquire among employees who had signed applications as to what they knew about the union. * * *

"On August 3 Kobritz was told by employee Cobb that Moon and Grant were the leaders in the union activities. Later the same day Moon and Grant were discharged. Whether or not their dismissals were violative of the Act is in issue.

"When these two employees were discharged Kobritz paid them for the remainder of the current and the following week. On August 13 a number of employees met with Mahon and decided to strike the next Monday unless Kobritz reinstated Moon and Grant. The next day Mahon repeatedly communicated with Kobritz, who merely referred him to his lawyer. On Monday all but one of the employees went on strike, and remained out until mid-September, when they applied unconditionally for reinstatement. Kobritz refused to reinstate them, claiming that their jobs had been filled. Since their applications for reinstatement were made only one of the employees has been rehired. It is General Counsel's position, opposed by respondent's counsel, that: (1) the strike was caused by the respondent's unfair labor practices; and (2) that the strikers were discriminatorily denied reinstatement on September 16, 1949."

The respondent's contentions, opposing the Board's petition for enforcement, are summarized in its brief as follows:

"A. The Board improperly asserted jurisdiction in this case.

"B. The Board's finding that respondent, by interrogation, threats of reprisal and promises of benefit, interfered with, restrained and coerced his employees in violation of Section 8(a) (1) of the Act is not supported by substantial evidence on the record considered as a whole.

"C. The Board's finding that respondent refused to bargain with the Union in violation of Section 8(a) (5) of the Act is not supported by substantial evidence on the record considered as a whole.

"D. The Board's finding that respondent violated Section 8(a) (3) of the Act by discharging employees Moon and Grant and by denying reinstatement to nine strikers is not supported by substantial evidence on the record considered as a whole."

The respondent's first contention, regarding jurisdiction, seems to revolve around the theme not that the Board did not have

---

2. The Findings of fact in this and following sections are based upon the Trial Examiner's consideration of the record as a whole and upon his observation of the witnesses. It would unnecessarily burden the report to describe, in minute detail, his analysis of all testimony, varying and in some cases contradictory, bearing upon each relevant incident.

3. The quotations are from, and the finding based upon Kobritz' own testimony, on direct examination by General Counsel. Upon cross-examination by his own counsel he altered his testimony somewhat.

jurisdiction but that the Board should not have asserted jurisdiction. Respondent points to an alleged policy of the Board (prior to October 3, 1950 and in effect when this case arose in 1949 and when submitted to the Board in June 1950) that the Board would not take jurisdiction of such a case as this. It is argued that the respondent, relying in good faith on this policy, thought its case was outside the pale of the Board's action and that any application of a policy enunciated by the Board in a line of decisions issued October 3, 1950, would be retroactive and illegal, citing Arizona Grocery v. Atchison Ry., 284 U.S. 370, 52 S.Ct. 183, 76 L.Ed. 348.

■ The simple answer to this is that the Board had jurisdiction all the time. National Labor Relations Board v. Jones & Laughlin, 301 U.S. 1, 57 S.Ct. 615, 81 L.Ed. 893. The Board's exercise of discretion here does not enlarge or exceed its jurisdiction so as to prejudice this respondent since the acts complained of, if proved, would violate the Act and redress can be procured under it. A "stoppage of * * * operations by industrial strife", referred to in the Jones & Laughlin case, supra, 301 U.S. at page 41, 57 S.Ct. at page 626, 81 L.Ed. 893, appears in this case where over $1,000,000 in goods were shipped annually interstate to the respondent's plant. There is no merit in the respondent's contention that the Board improperly asserted jurisdiction. It has been held that the Board is not precluded from asserting jurisdiction over a respondent because it did not exercise jurisdiction in the past over similarly situated respondents. See National Labor Relations Board v. Baltimore T. Co., 4 Cir., 140 F.2d 51, certiorari denied 321 U.S. 795, 64 S.Ct. 848, 88 L.Ed. 1084. In any event, it does not appear that the Board restricted itself to the rigid policy of declining jurisdiction which the respondent claims existed. See Geo. I. Petit, Inc., 89 NLRB 710; Julian Freirich Co., 86 NLRB 542; Tennessee Packers, Inc., 87 NLRB 90.

■ Respondent's second contention is without merit because the Board's findings in regard to the violations of Section 8(a) (1) of the Act, are supported by substantial evidence on the record considered as a whole. Universal Camera Corp. v. Labor Bd., 340 U.S. 474, 71 S.Ct. 456, 95 L.Ed. 456.

It appears in the record that the respondent polled his employees and clearly expressed dissatisfaction at their union activity. It was testified by at least two witnesses that Kobritz threatened to close the doors and that he made threats and offered inducements to various strikers. The discharge of Moon and Grant followed his receipt of information that they were the "ringleaders" of the organizing effort.

■ Respondent's third contention likewise is without merit because the Board's finding in regard to the violations of Section 8(a) (5) of the Act is supported by substantial evidence on the record considered as a whole.

Respondent apparently does not seriously question the finding of the Board as to the appropriate unit. Its finding on this point is well founded. Packard Motor Car Co. v. Labor Board, 330 U.S. 485, 67 S.Ct. 789, 91 L.Ed. 1040; National Labor Relations Board v. Clinton E. Hobbs, 1 Cir., 132 F.2d 249.

Respondent's other contentions, as to the lack of substantial factual support for a finding of a Section 8(a) (5) violation, relate primarily to Kobritz's conversations with Mahon, the union organizer. The original visit of Mahon to Kobritz on August 1, 1949, on which occasion he demanded a union contract, and his later numerous telephone calls to Kobritz asking for contract negotiations, supplied ample evidence on which the Board could find as a fact that the respondent refused to bargain. For proof of the Section 8(a) (5) violation, the Board indeed relied in large part upon Kobritz's own testimony. Kobritz originally testified that Mahon told him that "the boys are all signed up." He did, however, modify his testimony later on examination by his own counsel, stating that "He (Mahon) told me that some of them, some of them had signed up with him. He didn't say that they all had." Kobritz maintains that his final statement in this regard is the only evidence upon which a finding can be based. We do not agree that the Massachusetts rule binding a party-witness to the final

version of the facts which he elected to stand on, as enunciated in Sullivan v. Boston Elevated Ry. Co., 224 Mass. 405, 112 N.E. 1025, is applicable to this case.

It is for the Board to weigh the evidence, pass upon the credibility of witnesses and select between conflicting and contradictory testimony. See National Labor Relations Board v. Reed & Prince Mfg. Co., 1 Cir., 118 F.2d 874, certiorari denied 313 U.S. 595, 61 S.Ct. 1119, 85 L.Ed. 1549, and National Labor Relations Board v. Bird Mach. Co., 1 Cir., 161 F.2d 589. Local 385 was the only union in the field claiming to represent respondent's employees, and it is clear that a large majority of the men had signed up with the union at the time of the demand to bargain. It does not appear that Kobritz coupled his refusal to bargain with the expression of a doubt as to the union's majority status, and the Board was warranted in finding that Kobritz had no bona fide doubt on this score.

It is true that the union, upon meeting such refusal to bargain, first adopted the course of filing a representation petition for certification by the Board under Section 9 of the Act. Later this representation petition was dismissed at the union's own request. But the right of employees to bargain collectively through an exclusive bargaining representative is not conditioned upon an antecedent certification by the Board where, as here, the majority status of the union is clearly established otherwise, and the employer has no bona fide doubt of such majority status, but seeks to delay bargaining negotiations while resorting to various coercive tactics designed to dissipate the union majority support. National Labor Relations Board v. Reed & Prince Mfg. Co., supra; National Labor Relations Board v. National Seal Corp., 2 Cir., 127 F.2d 776; National Labor Relations Board v. Franks Bros. Co., 1 Cir., 137 F.2d 989, affirmed 321 U.S. 702, 64 S.Ct. 817, 88 L. Ed. 435; National Labor Relations Board v. Harris-Woodson Co., 4 Cir., 162 F.2d 97.

Respondent makes a more fundamental attack upon the finding of a Section 8(a) (5) violation. He asserts that the trial examiner committed error, in violation of Section 10(b) of the Act, in permitting the Board to amend its complaint at the hearing so as to allege, for the first time, that respondent committed the unfair labor practice of refusing to bargain collectively with the union representing a majority of his employees. Section 10(b) of the Act, as amended (61 Stat. 146) reads as follows: "(b) Whenever it is charged that any person has engaged in or is engaging in any such unfair labor practice, the Board, or any agent or agency designated by the Board for such purposes, shall have power to issue and cause to be served upon such person a complaint stating the charges in that respect, and containing a notice of hearing before the Board or a member thereof, or before a designated agent or agency, at a place therein fixed, not less than five days after the serving of said complaint: *Provided,* That no complaint shall issue based upon any unfair labor practice occurring more than six months prior to the filing of the charge with the Board and the service of a copy thereof upon the person against whom such charge is made, * * * Any such complaint may be amended by the member, agent, or agency conducting the hearing or the Board in its discretion at any time prior to the issuance of an order based thereon. The person so complained of shall have the right to file an answer to the original or amended complaint and to appear in person or otherwise and give testimony at the place and time fixed in the complaint. * * *"

The original charge was filed by the union September 2, 1949. It alleged violations of Section 8(a), subsections (1) and (3) of the Act specifically by the discriminatory discharges of Moon and Grant. A first amended charge was filed October 3, 1949, giving an added basis for the charge in that the employer discriminatorily refused to reinstate a group of employees subsequent to a strike. On November 28, 1949, the union filed a second amended charge which included an allegation of a Section 8(a) (5) unfair labor practice consisting of respondent's refusal to bargain collectively with the majority representative. In view of the death of Mahon, the union organizer, the union apparently thought that it would be unable to establish the 8(a) (5) violation

without his testimony; hence on December 16, 1949, the union filed a third amended charge, which contained no specific reference to any 8(a) (5) violation, though it did contain the usual general allegation that by the specific acts stated, "and by other acts and conduct," the employer had interfered with, restrained and coerced its employees in the exercise of their rights guaranteed them by Section 7 of the Act.

The Board's original complaint was issued January 16, 1950. It contained no specific allegation of an 8(a) (5) violation. At the hearing on February 7, 1950, in view of the admissions contained in Kobritz's testimony, the Board moved to amend the complaint so as to insert an allegation of an 8(a) (5) unfair labor practice based upon the refusal to bargain. Over objection, the motion to amend was granted. Respondent filed an amended answer denying the allegations of the amended complaint. Respondent did not take advantage of an offer by the trial examiner to declare a reasonable continuance of the hearing in order to afford respondent an opportunity to meet the amended complaint.

■ The second amended charge, filed November 28, 1949, was timely filed, within the requirement of Section 10(b) that the filing of a charge with the Board must take place within six months after the occurrence of the alleged unfair labor practice. But respondent contends that the filing of the third amended charge in effect constituted a withdrawal of the second amended charge; and that therefore the amendment to the complaint on February 7, 1950, was not supported by any seasonably filed charge in effect on that date. From this the conclusion is urged that the amended complaint was barred by Section 10(b) of the Act, since it charged an 8(a) (5) violation occurring more than six months previously. The argument is not persuasive. The union chose to file a third amended charge. But that did not automatically constitute a withdrawal of the second amended charge, or preclude the Board from predicating a complaint upon such second amended charge. The Board's rules and regulations provide that any charge "may be withdrawn, prior to the hearing,

only with the consent of the Regional Director with whom such charge was filed" (29 C.F.R. § 102.9, 1949 ed.). It does not appear in the record that the Regional Director consented to the withdrawal of the second amended charge. It is evident that the Board regarded the second amended charge as still before it, for the "Notice of Hearing" attached to the original complaint, dated January 16, 1950, stated that "A copy of the Charge, the First Amended Charge, the Second Amended Charge, and the Third Amended Charge, upon which the complaint is based are attached hereto."

■ In further answer to respondent's argument on this branch of the case, it may be pointed out that, while the filing of a charge is a condition precedent to the Board's power to issue a complaint, the charge does not serve the function of a pleading, but merely sets in motion the machinery of an inquiry by the Board. After such inquiry, the Board is entitled to issue a complaint alleging such unfair labor practices as the Board believes to be susceptible of proof. See National Labor Relations Board v. Westex Boot & Shoe Co., 5 Cir., 190 F.2d 12. It is quite clear the original and amended charges were based upon a closely related factual situation. As was said in Cusano v. National Labor Relations Board, 3 Cir., 190 F.2d 898, 903, in footnote 8: "A charge is not a pleading. The function of a charge under the Act is merely to provide the spark which starts the machinery of the Act running. See Kansas Milling Co. v. N.L.R.B., 10 Cir., 1950, 185 F.2d 413; N.L.R.B. v. Indiana & M. Electric Co., 1943, 318 U.S. 9, 18, 63 S.Ct. 394, 87 L.Ed. 579. The Board proceeds to make an inquiry, and it is on the basis of that inquiry that the formal complaint is issued by the Board."

In National Labor Relations Board v. Kingston Cake Co., 3 Cir., 191 F.2d 563, 567, the court said: "The purpose of the charge is to give the Board a preliminary basis for determining whether to proceed in the investigation of the case. For this purpose, it is of course not essential that it be precise. Indeed, it would hardly be consistent with the general investigatory nature of the action on the charge to con-

fine the subsequent complaint to its allegations."

We think respondent's argument is also weakened by the fact that Section 10(b) of the Act expressly provides that any complaint "may be amended by the member, agent, or agency conducting the hearing or the Board in its discretion at any time prior to the issuance of an order based thereon."

■ It is of no consequence that the amendment to the complaint, alleging the 8(a) (5) unfair labor practice, was made more than six months after the date of the alleged refusal to bargain. Section 10(b) provides that no complaint shall issue based upon any unfair labor practice occurring more than six months prior to the filing of the charge, but it does not require that the complaint be issued within such six-month period. The omission was not inadvertent. H.Rep.No.510, June 3, 1947 (U. S. Code Cong. Serv. 80th Cong., 1st Sess., 1947, pp. 1135, 1159), states: " * * * the conference agreement omits the provision of the House bill respecting the time within which a complaint must issue after a charge is filed, and retains the language of the Senate amendment that requires that charges . be filed, and notice thereof be given, within 6 months after the acts complained of have taken place."

■ Respondent's counsel also urged at the oral argument that the Board's rules and regulations made no specific provision as to the effect which the filing of a third amended charge would have upon a charge previously filed; that when the Board in this case treated the second amended charge as being still before it, notwithstanding the filing of the third amended charge, it failed to comply with the provision of Section 3 (a) of the Administrative Procedure Act requiring the publication of rules. It is said that this court under Section 10(e) of the Administrative Procedure Act, should set aside the action of the Board in filing an amended complaint upon the basis of a second amended charge which had been superseded by a third amended charge, since such agency action was "without observance of procedure required by law * * *". This particular objection, not having been advanced in the course of the administrative proceedings before the Board, cannot be urged on review in the court of appeals. Section 10(e) of the Act. Furthermore, the objection is obviously without merit. As above indicated, the Board's rules and regulations do provide that a charge once filed cannot be withdrawn prior to the hearing without the consent of the Regional Director. That the Regional Director permits an amended charge to be filed does not mean that he has consented to the withdrawal of an earlier charge. In the absence of indication in the record that such consent was given, the Board, in accordance with its own published rules of procedure, was entitled to consider the Second Amended Charge as still before it for the purpose of sustaining a complaint thereon.

■ Respondent's contention is without merit as to the Section 8(a)(3) violation, because the Board's finding that the respondent violated that section by discharging employees Moon and Grant and by denying reinstatement to the strikers is supported by substantial evidence on the record considered as a whole. The respondent's clear hostility to the union and the reasonable inferences that can be drawn from his activities relating to the union's organizing effort, the strike, and the replacement of the strikers, clearly support the Board's finding in this regard. The reason advanced by the respondent for discharging Moon and Grant, because they refused to work overtime, might well have been regarded as spurious by the Board.

■ We find no merit in respondent's contention that the strike by nine of the ten employees in the bargaining union, which started on August 15, 1949, was an economic strike, as distinguished from a strike provoked by unfair labor practices. Certainly the Board was warranted in finding that the strike was instigated and maintained as a protest against the discriminatory discharge of Moon and Grant and against the refusal of the employer to accord union recognition and to bargain collectively. There was testimony by an attorney for respondent that on August 20 the attorney had offered on behalf of respondent to reinstate Moon and Grant and

to take back the strikers. But this testimony did not require a finding that the strike was thereafter converted into an economic strike giving the employer the freedom to replace the strikers permanently and thereby to terminate their employment. The trial examiner did not believe that respondent had made a clear and unconditional offer to reinstate Moon and Grant. Furthermore, it seems to be clear that respondent did not at this time offer to undo the other unfair labor practice which had partly caused the strike, namely, the refusal to bargain with the union as the chosen representative of the men. The strike therefore continued as an unfair labor practice strike until, on September 16, all of the employees unconditionally requested to be taken back and were met by the statement that their jobs had been filled. In such a situation, the strikers are entitled to reinstatement, even though the employer finds it necessary to discharge new employees hired during the strike. National Labor Relations Board v. Poultrymen's Service Corp., 3 Cir., 138 F. 2d 204, 210; National Labor Relations Board v. Moore-Lowry F. M. Co., 10 Cir., 122 F.2d 419.

We therefore conclude that the findings of the Board are supported by substantial evidence on the record considered as a whole and that the petition of the Board for enforcement of its order should be granted.

A decree will be entered enforcing the order of the Board.