AMALGAMATED CLOTHING WORKERS OF AMERICA, AFL–CIO, Petitioner,

v.

NATIONAL LABOR RELATIONS BOARD, Respondent,

Henry I. Siegel Co., Inc., Intervenor.

No. 60, Docket 28123.

United States Court of Appeals Second Circuit.

Argued Oct. 16, 1963.

Decided Nov. 6, 1963.

James J. Graham (of Jacob Sheinkman), New York City, for petitioner.

Hans J. Lehmann, N. L. R. B., Washington, D. C. (Arnold Ordman, Gen. Counsel, Dominick L. Manoli, Associate Gen. Counsel, Marcel Mallet-Prevost, Asst. Gen. Counsel, and Allison W. Brown, Jr., Washington, D. C., on the brief), for respondent.

Osmond K. Fraenkel (of Hays, St. John, Abramson & Heilbron), New York City (William Abramson, New York City, on the brief), for intervenor.

Before WATERMAN, HAYS and MARSHALL, Circuit Judges.

HAYS, Circuit Judge.

Petitioner, as the person aggrieved by the Board's order dismissing in its entirety a complaint of unfair labor practice, brings this proceeding to review that order. We hold that the dismissal of the complaint was not justified by the reasons given by the Board and remand the case to the Board for consideration of whether there was a waiver of the right to bring a charge as to the conduct which was the subject of the complaint.

The complaint charged a refusal to bargain in violation of Section 8(a) (5) of the National Labor Relations Act, 29 U.S.C. § 158(a) (5). Petitioner was the charging party.

Petitioner is a labor organization which represents the employees at certain plants of Henry I. Siegel Co., Inc. for the purposes of collective bargaining and has been the recognized bargaining agent of such employees since 1946. It has had a series of successive contracts with the employer covering the period from 1946 to the present time. The controversy with which we are now concerned involved the collective agreement executed in 1961 to cover the period 1961 to 1963.

Most of the employees whom the petitioner represents are sewing machine operators and pressers. The 1961 agreement like previous agreements between the parties, fixed "base rates" and "piece rates" for these employees. The "base rates" are, in effect, the rates which the least competent employee may be expected to make. The "piece rates" are figured by management engineers on the basis of time studies. They are composed of the average observed time required for a normal operator to perform each element of an operation plus certain additional allowances for such items as machine delays, personal needs and fatigue and plus an incentive factor of 12½ per cent for increased production. The 1961 collective agreement contained the base rates and piece rates for almost 100 kinds of then existing operations. The agreement also provides for fixing rates for new or changed operations.

During the negotiations for the 1961 agreement the petitioner inquired of the employer whether the employer intended to continue to use the 12½ per cent incentive factor in the computation of new and changed piece rates, and was assured that that factor would be used. There was thus, as the Trial Examiner and the Board found, an agreement between the employer and the petitioner to use the 12½ per cent incentive factor in computing piece rates, though the Board refers to that agreement as an agreement "in principle."

The petitioner requested that a clause referring to the 12½ per cent incentive factor be included in the collective agreement and proposed the following language:

"It is understood that the base rate in the stitching room is [not yet fixed; to be filled in] per hour and that the base rate for pressers is [not yet fixed; to be filled in] per hour and that the rates are engineered on the basis of a 12½ per cent incentive above the base rate."

The employer refused to accept this provision. In fact it refused, as the Board found, to incorporate in the agreement any reference at all to the 12½ per cent incentive factor. It gave as its ground for such refusal that "any named percentage figure would be construed by the employees as a guarantee of earnings amounting to such percentage above the base rates."

The Trial Examiner held that the employer's refusal to execute a written contract including its oral agreement as to the 12½ per cent incentive factor constituted a refusal to bargain in violation of Section 8(a) (5) of the National Labor Relations Act, 29 U.S.C. § 158(a) (5). The Board, while accepting all of the Trial Examiner's findings of fact, rejected his conclusion that the Act was violated by the employer's conduct.

It is well settled that the employer's refusal to incorporate an oral agreement in a written contract constitutes the unfair labor practice of refusal to bargain in violation of Section 8(a) (5). H. J. Heinz Co. v. N. L. R. B., 311 U.S. 514, 61 S.Ct. 320, 85 L.Ed. 1394 (1941).

The Board recognized this rule but dismissed the complaint on the ground that the contract as executed embodies the oral agreement. The Board finds this incorporation in the following provisions:

"Article V. Section 1. The Employer and the Union agree that piece rates and time work rates shall be those set forth in the separate schedule, annexed hereto as Schedule A to be initialed by the parties hereto, the provisions of which are incorporated herein.

"Section 2. Adjustments in individual rates and rates for new or changed operations shall be made by mutual agreement between the parties hereto and shall be related to the rate schedules contained in Schedule A. If the parties cannot agree upon such adjustments the questions shall be referred to the Impartial Chairman for decision as provided in Article XI hereof."

The Board argues that since the piece rates in Schedule A are fixed in the light of the 12½ per cent incentive factor, the new or changed rates must be understood to include that factor because it is required that they be "related to" the piece rates in Schedule A.

But this is to put more weight on the phrase "related to" than it can possibly bear under any literal construction. The new and changed rates could be "related to" the Schedule A piece rates in any number of ways other than by containing the 12½ per cent incentive factor. It is by reference to the oral agreement that the 12½ per cent factor becomes a required element in the relationship, and only by reference to the oral agreement. We conclude, therefore, that the oral agreement is not embodied in the writing.

Not only is the rule requiring incorporation of oral agreements in a written contract supported by impressive authority and by general considerations involv-

ing the stability of labor relations, H. J. Heinz Co. v. N. L. R. B., supra; Art Metals Const. Co. v. N. L. R. B., 110 F.2d 148 (2d Cir. 1940); N. L. R. B. v. Grace Co., 184 F.2d 126, 129 (8th Cir. 1950); Gatliff Coal Co. v. Cox, 152 F.2d 52 (6th Cir. 1945), but the petitioner advances cogent arguments which support its application to the situation now before us. The petitioner contends that, having won from the employer the concession that the 12½ per cent incentive factor will continue to be applied to the computation of piece rates, the union has the right to receive the credit for its success in bargaining and the prestige which would be evidenced by the inclusion of the figure in the written agreement. Moreover, says the petitioner, if a dispute over new rates should have to be referred to arbitration, there is no assurance, particularly in view of the parol evidence rule, that the arbitrator would decide the case by reference to the contemporaneous oral agreement.[1]

The reason given by the employer for being unwilling to include the undisputed provision, i. e. that employees would take the 12½ per cent figure as a guarantee, appears insupportable. It would be simple enough to devise language which would protect against misconstruction.

The employer also contends that it was under no duty to make a "concession" in the form of a counterproposal to the language proposed by the petitioner. But if the employer could object to any and all proposals of the union for language incorporating an agreement in writing and could refuse to make counterproposals, the requirement of executing a writing could be completely nullified. An employer's adamant refusal to accept all proposals as to language and his refusal

at the same time to suggest any language himself must be an unfair labor practice.

We hold therefore that the Board erred in its conclusion that the employer's refusal to incorporate its oral agreement in writing was not an unfair labor practice and that dismissal of the complaint for this reason is without adequate support in the record.

The employer has properly raised the question of whether the petitioner by executing a written contract which did not contain the disputed clause has waived its right to insist upon such a clause and, consequently, its right to press the matter before the Board. The Trial Examiner considered this issue and came to the conclusion that execution of the agreement did not constitute a waiver. On this issue the Board said:

> "In view of our holding, it is unnecessary to pass on the Trial Examiner's finding that the Union had not waived its right to negotiate further on this matter either by its execution and acceptance of the contract, or for other reasons."

■ Since this issue of waiver is one which requires for its determination the special expertise of the Board and, possibly at least, the consideration of evidence as to the parties' conduct, we must remand the cause to the Board for a finding on the issue. See N. L. R. B. v. Katz, 289 F.2d 700, 709 (2d Cir. 1961), rev. on other grounds, 369 U.S. 736, 82 S.Ct. 1107, 8 L.Ed.2d 230 (1962); N. L. R. B. v. Don Juan, Inc., 178 F.2d 625, 627 (2d Cir. 1949); N. L. R. B. v. Kingston Cake Co., 191 F.2d 563, 567–568 (3d Cir. 1951).

■ By a motion to dismiss the petition which was later withdrawn our at-

---

[1]. In this connection, it is significant that the employer's counsel when asked if he would urge upon an arbitrator the applicability of the parol evidence rule replied:
"Well, before an arbitrator, I don't know whether we would or not. I can't say."
It is true that he added:
"We would never deny, Mr. Trial Examiner, before an arbitration or any-

where else that our rates were engineered with the idea of creating a 12½ percent incentive. We would never deny it under any circumstances under any occasion."
But, as the Trial Examiner remarked, it is this type of doubt which would be resolved by including the oral agreement in a written contract.

tention was called to the fact that the collective agreement in controversy has expired and has been replaced by another which, it appears, also does not contain the provision for the 12½ per cent incentive factor. In its reconsideration of the case the Board will be able to weigh the effect of these recent developments.[2]

---

2. "[W]here the order obviously has become moot, the court can deny enforcement without further ado; but where the matter is one involving complicated or disputed facts or questions of statutory policy, a remand to the Board is ordinarily in order." N.L.R.B. v. Jones & Laughlin Steel Corp., 331 U.S. 416, 428, 67 S.Ct. 1274, 1281, 91 L.Ed. 1575 (1947).