INTERNATIONAL UNION, UNITED AUTOMO-
BILE, AEROSPACE & AGRICULTURAL IMPLE-
MENT WORKERS OF AMERICA, AFL–CIO,
LOCAL 283 *v.* SCOFIELD ET AL.

No. 18. Argued October 20, 1965.—Decided December 7, 1965.*

---

*Together with No. 53, *International Union, United Automobile, Aerospace & Agricultural Implement Workers of America, Local 133, UAW, AFL–CIO* v. *Fafnir Bearing Co. et al.,* on certiorari to the United States Court of Appeals for the Second Circuit.

*Joseph L. Rauh, Jr.*, argued the cause for petitioners in both cases. With him on the briefs were *John Silard, Daniel H. Pollitt, Stephen I. Schlossberg, Eugene Gressman, Harold A. Katz, Irving M. Friedman, Philip L. Padden, William S. Zeman* and *Benjamin Rubenstein.*

*Solicitor General Marshall* argued the cause for respondents in both cases. With him on the brief for the

National Labor Relations Board were *Ralph S. Spritzer, Arnold Ordman, Dominick L. Manoli* and *Norton J. Come.*

Mr. Chief Justice Warren delivered the opinion of the Court.

The two cases before us present converse sides of a single question—whether parties who are wholly successful in unfair labor practice proceedings before the National Labor Relations Board have a right to intervene in the Court of Appeals review proceedings.

In No. 18 (*Scofield*), the Union Local was charged by four individual employees with violations of the National Labor Relations Act, as amended, 61 Stat. 136, 73 Stat. 519, 29 U. S. C. § 151 *et seq.* (1964 ed.), for fining certain Union members for exceeding incentive pay ceilings set by the Union. The General Counsel of the Board issued a complaint. After a full hearing, the Board dismissed the complaint, 145 N. L. R. B. 1097. The individual employees then sought review in the Seventh Circuit. The General Counsel filed an answer supporting the decision. At this point, the Union filed a timely motion of intervention, alleging that it would be directly affected should the appellate court set aside the Board's decision and direct the entry of a remedial order against it. Neither the individual employees nor the Board opposed intervention. A division of the Seventh Circuit denied the motion to intervene, but authorized the Union to file a brief as *amicus curiae* without leave to participate in oral argument. The Union sought review here, and we granted certiorari to review the denial of intervention because of the importance of the issue and the conflict among the courts of appeals, 379 U. S. 959. Further proceedings were stayed pending the completion of our review.

In No. 53 (*Fafnir*), the Local filed unfair labor practice charges against the Fafnir Bearing Company. The

charging party alleged that the company had violated its statutory bargaining obligation by refusing to permit the contracting Union to conduct its own time studies of job operations in the plant. The Union allegedly needed to conduct these studies to ascertain whether it should proceed to arbitration. The General Counsel issued a complaint, a hearing was held, and the Board entered a cease-and-desist order against the company, 146 N. L. R. B. 1582. The company petitioned for review in the Second Circuit, and the Board filed a cross-petition for enforcement. The Union—the successful party before the Board—moved to intervene, alleging numerous grounds in support. Both the company and the Board opposed intervention. The Second Circuit denied the motion, although cognizant of the difficulties of the problem, and authorized the Union to file an *amicus* brief. 339 F. 2d 801. We granted certiorari, 380 U. S. 950, and consolidated *Fafnir* with *Scofield* in order to consider both facets of the intervention problem.

We hold that both the successful charged party (in *Scofield*) and the successful charging party (in *Fafnir*) have a right to intervene in the Court of Appeals proceeding which reviews or enforces Labor Board orders. We think that Congress intended to confer intervention rights upon the successful party to the Labor Board proceedings in the court in which the unsuccessful party challenges the Board's decision.

A threshold question concerns our jurisdiction to grant certiorari. Under § 1254 (1) of the Judicial Code,[1] only

---

[1] Section 1254 (1), 28 U. S. C. § 1254 (1) (1964 ed.), provides:

"Cases in the courts of appeals may be reviewed by the Supreme Court . . . :

"(1) By writ of certiorari granted upon the petition of any party to any civil . . . case, before or after rendition of judgment or decree."

a "party" to a case in the Court of Appeals may seek review here. In both these cases, the Union seeking certiorari was denied intervention and relegated to the status of an *amicus curiae*. Because an *amicus* is not a "party" to the case, it would not have been entitled to file a petition to review a judgment on the merits by the Court of Appeals, *Ex parte Leaf Tobacco Board*, 222 U. S. 578, 581; *Ex parte Cutting*, 94 U. S. 14, 20–22. In view of our decision herein, we think that § 1254 (1) permits us to review the orders denying intervention. See *Railroad Trainmen* v. *Baltimore & O. R. Co.*, 331 U. S. 519.

## I.

Congress has made a careful adjustment of the individual and administrative interests throughout the course of litigation over a labor dispute. The Labor Act does not, however, provide explicitly for intervention at the appellate court level. Section 10 (f) of the Act, 61 Stat. 148, as amended, 29 U. S. C. § 160 (f) (1964 ed.), serves as our guide, even though it is silent on the intervention problem. It states, in pertinent part:

> "Any person aggrieved by a final order of the Board granting or denying in whole or in part the relief sought may obtain a review of such order in any United States court of appeals in the circuit wherein the unfair labor practice in question was alleged to have been engaged in or wherein such person resides or transacts business, or in the United States Court of Appeals for the District of Columbia, by filing in such a court a written petition praying that the order of the Board be modified or set aside."

Similarly, no specific standards govern the propriety of intervention in Labor Board review proceedings. The Rules of the Courts of Appeals typically provide: "A person desiring to intervene in a case where the appli-

cable statute does not provide for intervention shall file with the court and serve upon all parties a motion for leave to intervene." [2]

Lacking a clear directive on the subject, we look to the statutory design of the Act. Cf. *Scripps-Howard Radio v. Commission*, 316 U. S. 4, 11. Of course, in considering the propriety of intervention in the courts of appeals, our discussion is limited to Labor Board review proceedings. Federal agencies are not fungibles for intervention purposes—Congress has treated the matter with attention to the particular statutory scheme and agency.

In some instances, the words of the statute themselves elicit an answer. When the Board enters a final order against the charged party, it is clear that the phrase "[a]ny person aggrieved" in § 10 (f) enables him to seek immediate review in the appropriate Court of Appeals. Alternatively, if the Board determines that a complaint should be dismissed, the charging party has a statutory right to review as a "person aggrieved." A hybrid situation occurs when the Board dismisses certain portions of the complaint and issues an order on others. As to that portion which results in a remedial order against him, the charged party is aggrieved; likewise, the charging party is aggrieved with respect to the portion of the decision dismissing the complaint. Each one is a "party" in a consolidated appeal, and has invariably been granted leave to intervene with regard to the portion of the order on which the Board found in his favor. [3]

---

[2] Second Circuit Rule 13 (f); Seventh Circuit Rule 14 (f). The other circuits which provide for intervention have substantively identical rules: First Circuit Rule 16 (6); Third Circuit Rule 18 (6); Fourth Circuit Rule 27 (6); Sixth Circuit Rule 13 (6); Eighth Circuit Rule 27 (f); Ninth Circuit Rule 34 (6); Tenth Circuit Rule 34 (6); District of Columbia Circuit Rule 38 (f).

[3] *Darlington Mfg. Co. v. Labor Board*, 325 F. 2d 682 (C. A. 4th Cir.), vacated and remanded on other grounds, *sub nom. Textile Workers v. Darlington Co.*, 380 U. S. 263; *Industrial Union of*

*Scofield* serves as an example of another variant in review proceedings. The unsuccessful charging party to the Board proceedings petitioned for review, and the successful charged party wished to intervene. The vast majority of the courts have recognized his right to do so.[4] Recognition of intervention rights in this instance is in complete accord with the statements in *Ford Motor Co. v. Labor Board,* 305 U. S. 364, 369, 373, that:

> "While § 10 (f) assures to any aggrieved person opportunity to contest the Board's order, it does not require an unnecessary duplication of proceedings. The aim of the Act is to attain simplicity and directness both in the administrative procedure and on judicial review. . . .

> . . . . .

> ". . . The jurisdiction to review the orders of the Labor Relations Board is vested in a court with equity powers, and while the court must act within the bounds of the statute and without intruding upon the administrative province, it may adjust its

---

*Marine & Shipbuilding Workers* v. *Labor Board,* 320 F. 2d 615 (C. A. 3d Cir.); *Labor Board* v. *Wooster Div. of Borg-Warner Corp.,* 236 F. 2d 898 (C. A. 6th Cir.); see also *American Newspaper Publishers Assn.* v. *Labor Board,* 190 F. 2d 45 (C. A. 7th Cir.).

[4] *Carrier Corp.* v. *Labor Board,* 311 F. 2d 135 (C. A. 2d Cir.), reversed on other grounds, *sub nom. Steelworkers* v. *Labor Board,* 376 U. S. 492; *Local 1441, Retail Clerks International Assn.* v. *Labor Board,* 326 F. 2d 663 (C. A. D. C. Cir.); *Amalgamated Clothing Workers of America* v. *Labor Board,* 324 F. 2d 228 (C. A. 2d Cir.); *Minnesota Milk Co.* v. *Labor Board,* 314 F. 2d 761 (C. A. 8th Cir.); *Great Western Broadcasting Corp.* v. *Labor Board,* 310 F. 2d 591 (C. A. 9th Cir.); *Selby-Battersby & Co.* v. *Labor Board,* 259 F. 2d 151 (C. A. 4th Cir.); *Kovach* v. *Labor Board,* 229 F. 2d 138 (C. A. 7th Cir.). Contra, *Superior Derrick Corp.* v. *Labor Board,* 273 F. 2d 891 (C. A. 5th Cir.), cert. denied, 364 U. S. 816; *Amalgamated Meat Cutters* v. *Labor Board,* 267 F. 2d 169 (C. A. 1st Cir.), cert. denied, 361 U. S. 863; *Haleston Drug Stores, Inc.* v. *Labor Board,* 190 F. 2d 1022 (C. A. 9th Cir.).

relief to the exigencies of the case in accordance with the equitable principles governing judicial action. The purpose of the judicial review is consonant with that of the administrative proceeding itself,—to secure a just result with a minimum of technical requirements. . . ."

To allow intervention to the charged party in the first appellate review proceeding is to avoid "unnecessary duplication of proceedings," and to adhere to the goal of obtaining "a just result with a minimum of technical requirements." Analysis of the Act's machinery in practice so indicates. A decision of the reviewing court to set aside a Board order dismissing a complaint has the effect of returning the case to the Board for further proceedings. This normally results in the Board's entering an order against the charged party. From this remedial order, as noted, the charged party is aggrieved and may seek review. Judicial time and energy is then expended in pursuit of issues already resolved in the first appeal.[5] Moreover, the second appeal could lead to undesirable

---

[5] There are, of course, cases in which the Court of Appeals will remand to the Board to take additional evidence or to reconsider the order in light of litigational developments. In these cases, there is a greater opportunity for the party originally victorious before the Board successfully to persuade it or the appellate court than in the case in which no additional evidence need be taken. Still, the considerations discussed herein strongly suggest the propriety of intervention in these cases as well, especially since, at the time a motion for leave to intervene is filed, the reviewing court will not be fully apprised of the issues involved in the case.

Then, too, only 12 proceedings in which the Board had entered an order dismissing the complaint and the charging party appealed the dismissal in the Court of Appeals occurred during the 1964 fiscal year. See 29 NLRB Ann. Rep. 201, Table 19 (1964). In eight of these, the Board orders were affirmed in full. *Ibid.* The small caseload gives further support for the notion that the courts of appeals, and the Board, will not be disadvantaged by allowing intervention to the charged party.

"circuit shopping" and useless proliferation of judicial effort. Under § 10 (f), an aggrieved person has the option of obtaining review either in the circuit in which he maintains his residence or place of business or in the Court of Appeals for the District of Columbia Circuit. In the second appellate proceeding, he could obtain a hearing in the circuit which did not originally decide the validity of the Board's dismissal of the complaint. Permitting intervention in the first review thus centralizes the controversy and limits it to a single decision, accelerating final resolution. This is in accord with one of the objectives of the Labor Act—the prompt determination of labor disputes.

Permitting intervention also insures fairness to the would-be intervenor. If intervention is permitted, the parties to the Board proceedings are able to present their arguments on the issues to a reviewing court which has not crystallized its views. To be sure, if intervention is denied in the initial review proceeding, the charged party would not be bound by the decision under technical *res judicata* rules. Still, the salient facts having been resolved and the legal problems answered in this initial review, subsequent litigation serves little practical value to the potential intervenor. In the second appellate proceeding, the Court of Appeals would almost invariably defer to the initial decision as a matter of *stare decisis* or of comity.[6]  See, *e. g., Siegel Co.* v. *Labor Board,* 340

---

[6] In the rare instance in which the reviewing court does not abide by these principles, an even more aggravated situation could result. In the second review proceeding, if the now-successful charging party is denied intervention and the appellate court takes a different view of the applicable law, the charging party might later have the opportunity to seek review again as a "person aggrieved." Thus, three or even more review proceedings could be engendered out of the failure to permit intervention at the most convenient stage—the initial review proceeding. Such an incongruous result should not be sanctioned in light of our statement in *Ford Motor Co.* v. *Labor*

F. 2d 309; *Zdanok* v. *Glidden Co.*, 327 F. 2d 944, 949–950, cert. denied, 377 U. S. 934.

Allowing intervention does not affect the discretionary review powers of this Court. One occupying the status of intervenor in the Court of Appeals proceeding may seek certiorari from the decision there, *Steelworkers* v. *Labor Board*, 373 U. S. 908, 376 U. S. 492; *Mine Workers* v. *Eagle-Picher Co.*, 325 U. S. 335, 338–339. Denial of intervention in the initial review proceedings—and the attendant remand to the Board and second appeal to the Court of Appeals—only results in a delay of the time when the disaffected party may seek review here. Should we decide to grant certiorari, the first review would seem the more propitious time, since all the parties are then before the Court and the dispute has been fully developed without inconvenience to either private party. *Steelworkers* v. *Labor Board*, 376 U. S. 492, affords an apt illustration. The Court of Appeals had permitted intervention to the charged party who sought review from the adverse decision there. We reversed unanimously. The Board itself had not sought certiorari because "the Solicitor General concluded that other cases were entitled to priority in selecting the limited number of cases which the government [could] properly ask this Court to review." Memorandum for the NLRB, p. 2, filed in connection with the petition for certiorari, No. 89, October Term, 1963. Had the charged party been denied intervention in the Court of Appeals, the decision of the Government not to apply for certiorari—unrelated to the merits of the cause—would have unnecessarily postponed resolution on that important issue.[7]

---

*Board,* 305 U. S. 364, 370, that although "there are two proceedings, separately carried on the docket, they were essentially one so far as any question as to the legality of the Board's order was concerned."

[7] The Labor Board may also adversely affect the rights of the private parties in other instances. For example, the Board may

In fact, the Labor Board itself agrees that intervention by charged parties will not impair effective discharge of its duties and may well promote the public interest. The rights typically secured to an intervenor in a reviewing court—to participate in designating the record, to participate in prehearing conferences preparatory to simplification of the issues, to file a brief, to engage in oral argument, to petition for rehearing in the appellate court or to this Court for certiorari—are not productive of delay nor do they cause complications in the appellate courts. Appellate records in Labor Board cases are generally complete, and whatever material the charged party may see fit to add to the appendix will not affect the burden in preparation. Participation in defining the issues before the court guarantees that all relevant material is brought to its attention, and makes the briefs on the merits more meaningful. The charged party is usually accorded the right as an *amicus* to file a brief on the merits even if denied intervention. Participation in oral argument does not necessarily enlarge the total time allocated, since parties aligned on the same side are usually required to share the time.[8] And, as noted, petitioning for certiorari at this time has the salutary effect of insuring prompt adjudication. Further, if a charged party permitted to intervene decides to acquiesce in the

---

decide a case and later re-evaluate its position at a time when that case is before an appellate court. The General Counsel, in such a situation, cannot be expected wholeheartedly to attempt to convince an appellate court of the correctness of a doctrine which the Board itself has abandoned.

[8] First Circuit Rule 28 (3); Second Circuit Rule 23 (c); Third Circuit Rule 31 (3); Fourth Circuit Rule 15 (3); Fifth Circuit Rule 25 (3); Sixth Circuit Rule 20 (3); Seventh Circuit Rule 21 (b); Eighth Circuit Rule 13 (c); Ninth Circuit Rule 20 (3); Tenth Circuit Rule 20 (3); District of Columbia Circuit Rule 19 (c).

Additionally, all the circuits have rules which permit the court to increase the time for oral argument upon a showing of good cause.

decision or if certiorari is denied by this Court, it is likely that he will then stipulate to the entry of an order against him. This would obviate the need for supplemental agency or court proceedings. On the other hand, an *amicus*—with the exception of the right to file a brief— might be unable adequately to present all the relevant data to the court.

Finally, an element of fortuity would be injected by the denial of intervention to a successful party in the Board proceedings. When the charged party loses before the Board, he is accorded a statutory right to immediate review and may seek or oppose this Court's ultimate review of the case. If he prevails at the agency level, however, denial of intervention deprives him of the rights accorded a losing party, even though the issue before the reviewing court is identical—whether a remedial order should have been entered against the charged party. These considerations lead us to the assumption that Congress would not intend, without clearly expressing a view to the contrary, that a party should suffer by his own success before the agency.

Additionally, helpful analogies may be found in the Judicial Review Act of 1950, governing intervention in the Courts of Appeals by private parties directly affected by agency orders,[9] and in the Federal Rules of Civil Pro-

---

[9] Review of commission orders in general is governed by the provisions of the Judicial Review Act of 1950 (the Hobbs Act), 64 Stat. 1129, 5 U. S. C. §§ 1031–1042 (1964 ed.). The provision regarding appellate court intervention, 5 U. S. C. § 1038, provides as follows:

"The Attorney General shall be responsible for and have charge and control of the interests of the Government in all court proceedings authorized by this chapter. The agency, and any party or parties in interest in the proceeding before the agency whose interests will be affected if an order of the agency is or is not enjoined, set aside, or suspended, may appear as parties thereto of their own motion and as of right, and be represented by counsel in any proceeding to review such order. . . ."

cedure.[10]   We take these provisions to mean that Congress has exhibited a concern that interested private parties be given a right to intervene and participate in the review proceedings involving the specified agency and its orders.

## II.

The problem of whether intervention should be granted to the successful charging party to the Labor Board proceedings presents considerations somewhat distinct from the case of the intervening charged party.   Resolution of the problem is no easy matter, and it is understandable that the courts have divided on the issue.[11]   Still, we believe that Congress intended intervention rights to obtain.

The Board opposes intervention in *Fafnir*.   A charged party may incur a liability on account of an order being entered against him.   Fairness to him thus requires that

---

[10] The Federal Rules of Civil Procedure, of course, apply only in the federal district courts.   Still, the policies underlying intervention may be applicable in appellate courts.   Under Rule 24 (a)(2) or Rule 24 (b)(2), we think the charged party would be entitled to intervene.   See *Missouri-Kansas Pipe Line Co.* v. *United States,* 312 U. S. 502, 505–506; *Textile Workers Union of America* v. *Allendale Co.,* 96 U. S. App. D. C. 401, 403–404, 226 F. 2d 765, 767–768. The Advisory Panel on Labor-Management Relations Law issued a report, S. Doc. No. 81, 86th Cong., 2d Sess. (1960), which contained a statement of policy that "any party to NLRB proceedings should be allowed to intervene in the appellate proceedings," p. 17.

[11] The cases which have permitted intervention usually have not discussed the question, *e. g., Labor Board* v. *Johnson,* 322 F. 2d 216 (C. A. 6th Cir.); *Kearney & Trecker Corp.* v. *Labor Board,* 210 F. 2d 852 (C. A. 7th Cir.), cert. denied, *sub nom. Kearney-Trecker Employees, UAW* v. *Labor Board,* 348 U. S. 824; *West Texas Utilities Co.* v. *Labor Board,* 184 F. 2d 233 (C. A. D. C. Cir.), cert. denied, 341 U. S. 939.   Contra, *Labor Board* v. *Retail Clerks Assn.,* 243 F. 2d 777, 783 (C. A. 9th Cir.); *Stewart Die Casting Corp.* v. *Labor Board,* 132 F. 2d 801 (C. A. 7th Cir.); *Aluminum Ore Co.* v. *Labor Board,* 131 F. 2d 485, 488 (C. A. 7th Cir.).

he be allowed to intervene to preclude that possibility. On the other hand, the Board reasons, the charging party stands only to become a beneficiary of an order entered.[12] As such, he is but another member of the public whose interests the Board is designed to serve. The Labor Board is said to be the custodian of the "public interest," to the exclusion of the so-called "private interests" at stake. Support for this view is claimed to be found in our decision in *Amalgamated Util. Workers* v. *Consolidated Edison Co.,* 309 U. S. 261 (1940). Also, the Board fears that enabling the intervenor to petition for certiorari from an adverse circuit decision will be inimical to the public interest. We disagree.

In prior decisions, this Court has observed that the Labor Act recognizes the existence of private rights within the statutory scheme.[13] These cases have, to be sure, emphasized the "public interest" factor. To employ the rhetoric of "public interest," however, is not to imply that the public right excludes recognition of parochial private interests. A perusal of the statutory scheme and of the Board's Rules and Regulations is illustrative.

---

[12] Cf. Hart and Wechsler, The Federal Courts and The Federal System, 326 (1953):

"Haven't you noticed how frequently the protected groups in an administrative program pay for their protection by a sacrifice of procedural and litigating rights? The agency becomes their champion and they stand or fall by it. Does this phenomenon reflect a disregard or a recognition of the equities of the situation?"

See also Jaffe, The Public Right Dogma in Labor Board Cases, 59 Harv. L. Rev. 720 (1946).

[13] *Labor Board* v. *Fansteel Metallurgical Corp.,* 306 U. S. 240, 258; *Phelps Dodge Corp.* v. *Labor Board,* 313 U. S. 177, 194; *Nathanson* v. *Labor Board,* 344 U. S. 25, 27; *Smith* v. *Evening News Assn.,* 371 U. S. 195. See Jaffe, The Individual Right to Initiate Administrative Process, 25 Iowa L. Rev. 485, 528–531 (1940).

The statutory machinery begins with the filing of an unfair labor practice charge by a private person, § 10 (b), 61 Stat. 146; see also, 24 Fed. Reg. 9102 (1959), 29 CFR § 102.9 (1965). When the General Counsel issues a complaint and the proceeding reaches the adjudicative stage, the course the hearing will take is in the agency's control, but the charging party is accorded formal recognition: he participates in the hearings as a "party"; [14] he may call witnesses and cross-examine others, may file exceptions to any order of the trial examiner, and may file a petition for reconsideration to a Board order, 28 Fed. Reg. 7973 (1963), as amended, 29 CFR § 102.46 (1965). Of course, if the Board dismisses the complaint, he can obtain review as a person aggrieved, which serves the "public interest" by guaranteeing that the Board interpretation of the relevant provisions accords with the intent of Congress.[15]

---

[14] The NLRB Rules and Regulations and Statements of Procedure, 29 CFR § 102.8 (1965), afford the charging party this status. The section provides as follows:

"The term 'party' as used herein shall mean . . . any person named or admitted as a party, or properly seeking and entitled as of right to be admitted as a party, in any Board proceeding, including, without limitation, *any person filing a charge* or petition under the act, any person named as respondent, as employer, or as party to a contract in any proceeding under the act . . . ." (Emphasis added.)

[15] For an analysis of the rights of a charging party before the Board, see Comment, 32 U. Chi. L. Rev. 786 (1965). Of course, the considerations involved in determining whether the charging party has certain rights before the Board are not dispositive on the question of appellate intervention. In the first place, the need for centralized control over the agency hearings and the standards under which they operate is much greater at the administrative than the appellate level, where perforce an adequate record has been made for adjudication. Also, the statistics of the NLRB reveal that over 97% of the unfair labor practice charges are resolved before the circuit court has entered a decree. 29 NLRB Ann. Rep. 178–179,

And that the charging party may have vital "private rights" in the Board proceeding is clear in this very case, which also involves, potentially, a breach of the parties' collective bargaining agreement.[16] Under our decisions in the *Steelworkers* trilogy, 363 U. S. 564, 574, 593, and *Carey* v. *Westinghouse Corp.*, 375 U. S. 261, the Union could take whatever contractual claim it had to arbitration and from there to a federal court. And while it is true that the rights and duties under § 301 (a) of the Labor Act, 61 Stat. 156, are not coextensive with those redressed in Labor Board proceedings, a determination by an appellate court that the Union has no statutory right to conduct its own time studies will surely have an impact upon a later decision by an arbitrator or an appellate court under § 301 (a) on the contractual issue.

In short, we think that the statutory pattern of the Labor Act does not dichotomize "public" as opposed to "private" interests. Rather, the two interblend in the intricate statutory scheme.[17] Nor do we think that our holding in *Amalgamated Util. Workers,* 309 U. S. 261, casts doubt on these notions. The Court there held that private parties who initiated unfair labor practice charges may not prosecute a contempt action against the charged

Table 7 (1964). This winnowing process diminishes once a case is lodged in the circuit court and falls within our supervisory power over the federal courts. Then, too, manpower and budgetary considerations are of great concern at the administrative level. These factors are not nearly as great when a labor dispute reaches the appellate courts since the Board will invariably appear to defend its order.

[16] In the Board's opinion in *Fafnir,* the charging party's interests were referred to a dozen times as a statutory right of the "private party," 146 N. L. R. B., at 1585–1587.

[17] See *Retail Clerks Local 137* v. *Food Employers Council, Inc.,* 351 F. 2d 525.

party in the court which enforces the Labor Board order.[18] In the same case, the private parties had been permitted to intervene in the Court of Appeals when the merits of the Board's decision were at stake, 309 U. S., at 263. We find nothing inconsistent in denying the right of a private party to institute a contempt proceeding—where the Board's expertness in achieving compliance with orders is challenged—and, on the other hand, in permitting intervention in a proceeding already in the court for decision. When the court is to rule on the merits of the Board's order, the Act supports the view that it is the court and not the agency which will define the public interest, see § 10 (d), 49 Stat. 454, *Ford Motor Co.* v. *Labor Board,* 305 U. S. 364.

The Board also argues that permitting intervention will adversely affect its tactical or budgetary decision not to bring a case here for review. But the opportunity is open to the Board to advise this Court whether a case that the intervening charging party brings here is an appropriate vehicle to raise important issues. And Con-

---

[18] The Court placed great weight upon the language and legislative history behind § 10 (a), 49 Stat. 453, as it read at that time:

"The Board is empowered, as hereinafter provided, to prevent any person from engaging in any unfair labor practice (listed in section 8) affecting commerce. *This power shall be exclusive,* and shall not be affected by any other means of adjustment or prevention that has been or may be established by agreement, code, law, or otherwise." (Emphasis added.)

The italicized portion of § 10 (a) was deleted in the Taft-Hartley amendments to the Wagner Act in 1947, when Congress added the union unfair labor practice provisions and enacted § 301 (a). While it is true that the Labor Board does not confer a private administrative remedy, it is equally true that, since 1947, it serves substantially as an organ for adjudicating private disputes. See Report of the Advisory Panel on Labor-Management Relations Law, *supra,* n. 10, p. 5.

gress has entrusted to this Court, rather than the Labor Board, discretionary jurisdiction to review cases decided by the Courts of Appeals.[19]

Many of the considerations which favor intervention in *Scofield* are also pertinent here.[20] Of special note is the capriciousness we would have to ascribe to Congress in refusing to afford the successful party to a Labor Board proceeding an opportunity tantamount to that of the unsuccessful party in persuading an appellate court. The charging party, like the charged party, should not be prejudiced by his success before the agency. Accordingly, we reverse both cases and remand them to the respective courts for further proceedings.

*It is so ordered.*

---

[19] The Board also claims that the charging party, if permitted to intervene, will be able to thwart proposed settlements between the Board and the charged party when the case is in the appellate court. Nothing in the record indicates that this will be the consequence of allowing intervention and we intimate no view on the question.

[20] As in the case of the charged party, disallowing intervention could lead to duplicity in appellate review, "circuit shopping," unfairness to the successful party to the Board proceedings, etc.