NATIONAL LABOR RELATIONS
BOARD, Petitioner,

v.

NASHVILLE BUILDING AND CON-
STRUCTION TRADES COUN-
CIL, Respondent.

John J. A. REYNOLDS, Jr., Regional Di-
rector of the Twenty-Sixth Region of
the National Labor Relations Board, for
and on Behalf of the National Labor
Relations Board, Petitioner-Appellee,

v.

NASHVILLE BUILDING AND CON-
STRUCTION TRADES COUN-
CIL, Respondent-Appellant.

NASHVILLE BUILDING AND CON-
STRUCTION TRADES COUN-
CIL, Petitioner,

v.

Frank W. McCULLOCH, Sam Zagoria,
John H. Fanning, Gerald A. Brown, and
Howard Jenkins, Jr., as Chairman and
Members of the National Labor Rela-
tions Board, 1717 Pennsylvania Avenue,
N.W., Washington, D. C., Respondents.

Nos. 18016, 17688, 17956.

United States Court of Appeals
Sixth Circuit.

Oct. 5, 1967.

Carrol D. Kilgore, Nashville, Tenn.,
(Cecil D. Branstetter, Philip M. Carden,
Nashville, Tenn., on the brief), for Nash-
ville Bldg. & Const. Trades Council.

Julius G. Serot, Asst. Gen. Counsel, N.L.R.B., Washington, D. C., (Arnold Ordman, Gen. Counsel, Dominick L. Manoli, Associate Gen. Counsel, Marvin Roth, Atty., N.L.R.B., Washington, D. C., on the brief), for John J. A. Reynolds, Jr., Frank W. McCulloch and others, and National Labor Relations Board.

Wells T. Lovett, Owensboro, Ky., for intervenor, Markwell & Hartz, Inc.

Before O'SULLIVAN, EDWARDS and McCREE, Circuit Judges.

EDWARDS, Circuit Judge.

This is a situs picketing dispute arising under section 8(b) (4) (B) of the Taft-Hartley Act, 29 U.S.C. § 158(b) (4) (B) (1964). The underlying controversy is between a general contractor, Markwell & Hartz, and respondent, Nashville Building and Construction Trades Council. The Building Trades Council claims the general contractor (now engaged on a major sewer project for the City of Nashville) entered into an agreement to use only union labor supplied by the Building Trades Council, but has violated that agreement. The general contractor (intervenor in this case) [1] denies the existence of said agreement, but concedes the existence of the dispute over hiring of Building Trades Council labor. The contractor claims that after preliminary and inconclusive negotiations with the Building Trades Council, it reached an agreement for the furnishing of labor with another union, the United Mine Workers.

The Building Trades Council, in pursuance of its primary dispute with the general contractor, placed pickets on the sewer job. The general contractor had two subcontractors (Jordan Pile Driving Company and Ramsey Electric Company) with which companies the Building Trades Council admittedly had no labor dispute. The general contractor placed signs at Gates 2 and 3 which reserved these two gates for "neutral" subcon-

tractors and their suppliers. Gate 1 was marked for the use of Markwell & Hartz and its suppliers.

Appellant's amended pleading in the District Court injunction case admits that thereafter Building Trades Council pickets were posted at all of the entrances to the sewer project (including Gates 2 and 3) but denies that the reserved gate measures described had served effectively to separate the primary employer and its subcontractors.

Three legal proceedings have resulted from this controversy, all of which are now before this court for decision. In No. 17,688 the National Labor Relations Board sought and secured a temporary injunction under section 10(*l*) of the National Labor Relations Act, 29 U.S.C. § 160(*l*) (1964), from a United States District Judge restraining picketing at the sewer project site "except the entrances used by Markwell & Hartz, its employees and its suppliers." The injunction was issued "pending the final disposition of the matters involved pending before the National Labor Relations Board * * *."

The second preliminary proceeding No. 17,956, was a petition for writ of mandamus filed in this court by the Building Trades Council to direct the NLRB to consider its defenses, including the claimed contract violation by Markwell & Hartz.

At the time of the oral hearing before this court, a final order had already been issued on May 2, 1967, in the basic NLRB unfair labor practice proceeding against the Building Trades Council; and the NLRB had moved to dismiss the two preliminary proceedings on grounds of mootness. By stipulation entered into orally at said hearing and formalized in writing by exchange of letters of the parties, the NLRB agreed promptly to file and bring on for decision its petition to enforce its unfair labor practice order; and all parties agreed that the petition for enforce-

---

1. The petition of Markwell & Hartz to intervene in the enforcement proceeding is granted. See U.A.W. etc. v. Scofield, 382 U.S. 205, 86 S.Ct. 373, 15 L.Ed.2d 272 (1965).

ment should be considered and decided by this court on supplementary briefs without further hearing. The petition for enforcement of the NLRB order is now at issue in No. 18,016.

■■ Since by its terms the temporary injunction appealed from in No. 17,688 has now expired, the appeal is dismissed on grounds of mootness. See Monique, Inc. v. Boire, for and on Behalf of N.L.R.B., 344 F.2d 1017 (C.A.5, 1965); Carpenters' District Council etc. v. Boire, for and on Behalf of N.L.R.B., 288 F.2d 454 (C.A.5, 1961). Further, the petition for writ of mandamus, No. 17,-956, which was filed in this matter appears to us to be an attempt to substitute such a writ for the statutory processes of appellate review set forth in the NLRA. See 29 U.S.C. § 160(e), (f) (1964). In any event, all issues presented therein are now before this court for determination in the enforcement case. Therefore, the petition for writ of mandamus is denied.

In the unfair labor practice case No. 18,016, the Trial Examiner and the Board concluded that the Building Trades Council picketing at Gates 2 and 3 had induced employees of subcontractors Jordan and Ramsey to engage in work stoppages with the object of forcing said subcontractors to cease doing business with Markwell & Hartz in violation of section 8(b) (4) (B) of the NLRA, 29 U.S.C. § 158(b) (4) (B) (1964). The NLRB entered a cease and desist order and now seeks this court's enforcement of said order.

■ We do not believe that the factual record herein leaves any doubt—and certainly on the whole record there is substantial evidence—that the Building Trades Council did picket Gates 2 and 3 with the object of inducing work stoppages on the part of Ramsey and Jordan employees in order to force Ramsey and Jordan to cease doing business with the general contractor.

Respondent's principal contention is not a dispute about the facts. It is that the claimed Markwell & Hartz violation

of a prehire agreement justified the picketing. We have no doubt that the Building Trades Council does indeed have a legitimate labor dispute with the general contractor. But the Board's order—like that previously issued by the District Judge—was a restraint upon the picketing of Jordan and Ramsey. These are the two subcontractors with which the Building Trades Council admits it has no dispute, except in the general sense that their work contributes to the completion of the job undertaken by the general contractor.

This we view as another facet of the integrated construction site argument. The building trades unions have been advancing this argument before Congress (thus far without success) for all of the years since Congress adopted the "secondary boycott" provisions of the Taft-Hartley Act, 61 Stat. 136, 141–142 (1947), as amended, 29 U.S.C. § 158(b) (4) (1964), and the United States Supreme Court rejected this contention in construing these provisions as they affect the construction industry in the *Denver Building Trades* case. N.L.R.B. v. Denver Building & Construction Trades Council, 341 U.S. 675, 71 S.Ct. 943, 95 L.Ed. 1284 (1951). This court has just had occasion to review this history at some length in N.L.R.B. v. Muskegon Bricklayers Union, etc., 378 F.2d 859 (C.A.6, 1967).

■ As we see the matter, even if a violation by Markwell & Hartz of a prehire agreement with the Building Trades Council were established, this fact would not authorize respondent's picketing of gates reserved solely for use of subcontractors Jordan and Ramsey.

■ Picketing of an entrance reserved solely for employees of independent contractors who are "neutral" parties to a labor dispute centered on the same premises has been held to be an unfair labor practice. Local 761, International Union of Electrical Radio and Mach. Workers AFL–CIO v. N.L.R.B. (General Electric), 366 U.S. 667, 81 S.Ct. 1285, 6 L.Ed.2d 592 (1961).

We recognize, of course, that there is logic to the building trades argument that, at least as to a general contractor who had contracted to perform a total building job, no subcontractor working on that job for that general contractor should be regarded as entirely independent or "neutral" in a lawful labor dispute with the general contractor. However, whatever logic there may be to this argument has thus far been rejected by the United States Supreme Court. In the *Denver Building Trades* case, while the primary dispute was with a non-union subcontractor, the court said:

> "We agree with the Board also in its conclusion that the fact that the contractor and subcontractor were engaged on the same construction project, and that the contractor had some supervision over the subcontractor's work, did not eliminate the status of each as an independent contractor or make the employees of one the employees of the other. The business relationship between independent contractors is too well established in the law to be overridden without clear language doing so. The Board found that the relationship between Doose & Lintner and Gould & Preisner was one of 'doing business' and we find no adequate reason for upsetting that conclusion.[19]
>
> \* \* \* \* \* \*
>
> [19]. 'What the issue really boils down to is this: Does Section 8(b)(4)(A) apply to normal business dealings between a contractor and subcontractor, both engaged in the same general business, where boycott pressure is applied against the subcontractor in aid of a dispute with the principal contractor? Clearly it does under the wording of the statute.' Metal Polishers Union, 86 N.L.R.B. 1243, 1252."

N.L.R.B. v. Denver Building & Construction Trades Council, 341 U.S. 675, 689–690, 71 S.Ct. 943, 952, (1951).

In a companion case to *Denver Building Trades*, the Supreme Court dealt with a fact situation where the electricians' union having a dispute with an electrical subcontractor picketed a job site and was held to have thus induced a strike by a carpenter subcontractor's employees in order to compel the general contractor to cease doing business with the electrical subcontractor. These actions were held to represent a secondary boycott and a cease and desist order was enforced. The Supreme Court said:

> "The *Denver* case also covers the point that it was sufficient that *an* objective of the picketing, although *not necessarily the only* objective of the picketing, was to force Giorgi [the general contractor] to terminate Langer's [the electrical subcontractor] uncompleted contract and thus cease doing business with him on the project." International Brotherhood of Electrical Workers v. N.L.R.B., 341 U.S. 694, 700, 71 S.Ct. 954, 957, 95 L.Ed. 1299 (1951).

Judge Learned Hand's decision in the Second Circuit in this case, International Brotherhood of Electrical Workers, Local 501 v. N.L.R.B., 181 F.2d 34 (C.A.2, 1950), has been quoted with approval this year. See National Woodwork Manufacturers Ass'n v. N.L.R.B., 386 U.S. 612, 626 n. 16, 87 S.Ct. 1250, 18 L.Ed.2d 357 (1967).

Directly in point with the facts in our instant case is a case which also has direct and recent Supreme Court approval, Carpenters Local 55 (PBM), 108 N.L.R.B. 363, enforced, National Labor Relations Board v. Local Union No. 55, 218 F.2d 226 (C.A.10, 1954). In this case the primary dispute was with a general contractor and the picketing was held to be directed at one of his subcontractors. The PBM case has specific Supreme Court approval in the General Electric case. Local 761, International Union Electrical Radio and Mach. Workers v. N.L.R.B., 366 U.S. 667, 678, 81 S.Ct. 1285 (1961).

Appellant herein argues that where the primary dispute is with a general contractor, picketing of all of his subcontractors should be allowed because they are performing part of the general contractor's "normal operations." In this regard appellant relied on Local 761, International Union Electrical Radio and

Mach. Workers v. N.L.R.B. (General Electric), 366 U.S. 667, 681, 81 S.Ct. 1285 (1961); United Steelworkers of America v. N.L.R.B. (Carrier Corp.), 376 U.S. 492, 498–499, 84 S.Ct. 899, 11 L.Ed.2d 863 (1964). Neither of these cases dealt with the construction industry. Nor do we read them as adversely affecting the strength of the cases we have just discussed.

Under the precedent which we have cited, if appellant's contention in this case is to prevail, it is a decision for the Supreme Court or for the Congress.

Enforcement of the Board's order is granted.