923 F.2d 542
 136 L.R.R.M. (BNA) 2338, 59 USLW 2512,
118 Lab.Cas. P 10,534
 HARRISON STEEL CASTINGS COMPANY, Petitioner,
v.
NATIONAL LABOR RELATIONS BOARD, Respondent,
and
International Union, United Automobile, Aerospace, and
Agricultural Implement Workers of America, UAW,
Intervening-Respondent.
 No. 89-2247.
 United States Court of Appeals,
Seventh Circuit.
 Argued Nov. 6, 1990.
Decided Jan. 24, 1991.
 
 John T. Neighbours, Gregory N. Dale, Baker & Daniels, Indianapolis, Ind., for petitioner.
 Joseph E. DeSio, Aileen A. Armstrong, Scott MacDonald, N.L.R.B., Appellate Court, Enforcement Litigation, Washington, D.C., Ann E. Rybolt, N.L.R.B., Indianapolis, Ind., for respondent.
 Barry A. Macey, Segal & Macey, Indianapolis, Ind., Kathy Spear, Attica, Ind., for intervenor-respondent.
 Before BAUER, Chief Judge, POSNER and FLAUM, Circuit Judges.
 FLAUM, Circuit Judge.
 
 
 1
 Harrison Steel Castings petitions this court for review of a decision of the National Labor Relations Board. We find that the company has not been "aggrieved" by the Board's decision within the meaning of Sec. 10(f) of the National Labor Relations Act and therefore dismiss Harrison's petition for want of jurisdiction.
 
 
 2
 In April 1979, the United Automobile, Aerospace, and Agricultural Implement Workers of America filed with the National Labor Relations Board (Board) a petition for a representation election at Harrison Steel Castings Company (Harrison). During the months preceding the election, the company engaged in conduct which the Board later found to violate Sections 8(a)(1) and 8(a)(3) of the National Labor Relations Act (29 U.S.C. Sec. 158(a)(1) and (3)). Specifically, the Board found that Harrison discharged employees in retaliation for their activities in support of the Union, orally threatened employees that job losses and layoffs would result from unionization (the threats were made by company foremen), published written statements which threatened that job losses would result if the company unionized or if the employees engaged in an economic strike,[1] prohibited the distribution of pro-union literature both within and outside the plant, and engaged in other minor acts of harassment. See 262 NLRB 450 (1982). In conjunction with its findings, the Board issued a cease and desist order which required the company to desist from the unfair labor practices found and from otherwise interfering with the rights of its employees under Section 7 of the NLRA. Particularly relevant to our analysis is a portion of the Board's order that was designed to address the company's oral and written statements. The order enjoined the company from threatening employees that their "designation of a union could result in a loss of jobs and layoffs" or that "loss of jobs could result from participating in an economic strike." 262 NLRB at 481.
 
 
 3
 In 1983, the company petitioned this court for review of those portions of the Board's decision and order that dealt with its alleged discharge of employees for pro-union activity and the lawfulness of the company's written statements regarding the perils of unionization and economic strikes. The Board's other findings went unchallenged by Harrison and were accepted as true by the reviewing panel. On appeal, a panel of this court affirmed the Board's findings in their entirety and enforced its order. Harrison Steel Castings Co. v. NLRB, 728 F.2d 831 (7th Cir.1984).
 
 
 4
 After losing before the panel, Harrison filed a suggestion for rehearing en banc, addressing only the lawfulness of the company's written statements. This court originally granted the company's petition, vacated the panel opinion, and agreed to reconsider the case. On the Board's motion, however, we subsequently reinstated the original panel opinion with respect to all issues except for the lawfulness of the written statements, and remanded the question of the statements' propriety to the Board for further deliberation. NLRB v. Harrison Steel Castings Co., 735 F.2d 1049 (7th Cir.1984).
 
 
 5
 No less than five years later, in 1989, the Board issued a supplemental decision dealing with the written statements in question. 293 NLRB No. 143 (1989). It reiterated its initial finding that the company's competitiveness comments unlawfully threatened that job losses would result from unionization. However, the Board did not issue a supplemental order in conjunction with this finding, reasoning that its previous order, which this court had earlier enforced, already contained language directing the company not to repeat statements threatening job loss in the future.[2] (The relevant portions of the previous order remained enforced and were not vacated pending the Board's supplemental decision because they rested on independently affirmed grounds: that is, they served not only to counteract the written statements that were the subject of the remand and whose legality was in dispute, but also to remedy the oral threats of Harrison's foremen which the Board, in an uncontested portion of its original decision, ruled unlawful.)
 
 
 6
 On remand, the Board did not reconsider the lawfulness of Harrison's strike comments. It explained that because under the previously enforced order the company would "still be proscribed from threatening job losses for choosing union representation, we find no need to make the cumulative finding that [it] threatened job losses for engaging in the particular union activity of striking." 293 NLRB No. 143 at 4 n. 5. In accordance with its decision not to issue a supplemental finding concerning the strike comments, the Board modified its original order to delete the provisions specifically enjoining the company from making "unlawful threats of job loss from participating in a strike."
 
 
 7
 Harrison now asks us to reverse the Board's first supplemental finding regarding the competitiveness comments, and further, to rule that its strike comments did not violate Section 8 of the NLRA. The Board contends that we do not have jurisdiction to review its supplemental decision because Harrison has not been aggrieved by the decision within the meaning of Sec. 10(f) of the Act and thus has no standing to petition us for its review. We agree with the Board and dismiss Harrison's petition.
 
 II.
 
 8
 Section 10(f), 29 U.S.C. Sec. 160(f), of the National Labor Relations Act provides that "[a]ny person aggrieved by a final order of the Board granting or denying in whole or in part the relief sought may obtain review of such an order...." (emphasis added). The Supreme Court has interpreted Sec. 10(f) to mean that a party charged with violations of the Act is aggrieved only "[a]s to that portion [of a Board decision] which results in a remedial order against him." International Union, United Automobile Aerospace & Agricultural Implement Workers v. Scofield, 382 U.S. 205, 210, 86 S.Ct. 373, 377, 15 L.Ed.2d 272 (1965); see also Oil, Chemical and Atomic Workers v. NLRB, 694 F.2d 1289, 1294 n. 10 (D.C.Cir.1982). A party is "aggrieved" by an order if the order results in an "adverse effect in fact." Id. at 1294 (quoting Retail Clerks Union 1059 v. NLRB, 348 F.2d 369, 370 (D.C.Cir.1965)).
 
 
 9
 Both the text of Sec. 10(f) and the Supreme Court's interpretation of that provision in Scofield, then, provide that a charged party may only seek judicial review of Board orders--not Board "findings," or "charges," or "actions" (the first two are terms commonly used in other provisions of the NLRA and the latter, in the Administrative Procedure Act). An employer charged with violating the NLRA may not seek review of a Board decision merely because it is a party to the proceeding in which the decision is made; until the Board takes coercive action against a charged party in the form of a remedial order, see 29 U.S.C. Sec. 160(c), the party has not been aggrieved within the meaning of Sec. 10(f). See Deaton Truck Line Inc. v. NLRB, 337 F.2d 697, 698 (5th Cir.1964), cert. denied, 381 U.S. 903, 85 S.Ct. 1448, 14 L.Ed.2d 285 (1965) (party must be aggrieved by a final remedial order of the Board in order to seek judicial review; dissatisfaction with certain Board findings and conclusions is not enough). In this case, the Board's supplemental decision did not result in coercive action against the company; thus, we do not believe that Harrison has been "aggrieved" by the Board's decision within the meaning of Sec. 10(f).
 
 
 10
 Below, we examine in greater detail the Board's supplemental decision and why we believe it to be unreviewable. As described above, the Board's supplemental decision on remand addressed two categories of suspect comments in the company newsletter: those "competitiveness comments" which asserted that unionization would render the company noncompetitive and cause job losses and layoffs, and the "strike comments" which threatened employees with job loss if they engaged in an economic strike. We examine the second category of comments first.
 
 A. The Strike Comments
 
 11
 In its supplemental decision, the Board declined to determine the lawfulness of the statements originally alleged to threaten punishment of employees who engaged in protected strike activities. Because it chose not to rule on this question, the Board did not issue a supplemental cease and desist order directed at the strike-related comments; indeed, to emphasize that it was declining to rule on the lawfulness of the comments and ensure that there was no link between its original order and the strike-comments (and, no doubt, to insulate itself from review), the Board deleted the one sentence in its original order that referred to the employees' right to engage in strike activity.[3]
 
 
 12
 We do not have jurisdiction to review the Board's decision not to make an unfair labor practice finding. "Section 10(a) and (c) of the Act commits to the Board the exclusive power to decide whether unfair labor practices have been committed." National Licorice Company v. NLRB, 309 U.S. 350, 365, 60 S.Ct. 569, 578, 84 L.Ed. 799 (1940); see also United States v. Boffa, 688 F.2d 919, 929 (3rd Cir.1982), cert. denied, 465 U.S. 1066, 104 S.Ct. 1415, 79 L.Ed.2d 741 (1984); American Newspaper Publishers Ass'n v. NLRB, 190 F.2d 45, 48 (7th Cir.1951). Harrison responds that the Board did make a finding in its original decision that the strike-related statements at issue constituted an unfair labor practice. At this point, however, those charges have been functionally, if not officially, dismissed. The Board has not reaffirmed its original findings on remand or independently sanctioned the company for the strike comments; neither is what remains of the Board's outstanding remedial order enforced in our original panel opinion in any way predicated upon those original findings. Cf. United States Marshall's Service v. FLRA, 708 F.2d 1417, 1420 (9th Cir.1983) (where court of appeals statutory mandate to review certain FLRA decisions is limited to cases involving unfair labor practices, jurisdiction does not obtain unless the "unfair labor practice is either an explicit or a necessary ground for the final order issued by the Authority") (emphasis added). Because the company is not subject to a remedial order based on the original strike comment finding, it has not been aggrieved by the Board's treatment of that issue and may not seek its review.
 
 B. The Competitiveness Comments
 
 13
 On remand, the Board again ruled on the lawfulness of the comments in the company newsletter which suggested that unionization could render the company "noncompetitive with a resulting loss of business and jobs." See supra note 1. The Board affirmed its original finding that the comments were unlawful. It did not, however, issue a supplemental enforcement order directing the company not to make such comments in the future because it found that its previously enforced order (issued in response to the oral threats of two company foremen as well as to the company's written statements) included a blanket proscription against company comments threatening job loss. See supra note 2. A supplemental order, the Board observed, would have no effect beyond that of its previous order and thus would be superfluous. The Board now contends that because its supplemental finding has no independent adverse effect upon Harrison, we have no jurisdiction to hear Harrison's challenge to its ruling on the competitiveness comments.
 
 
 14
 We agree that absent an accompanying remedial order, the Board's supplemental decision has no adverse effect on Harrison. The company contends, however, that the mere existence of the Board's unfair labor practice finding acts to "silence" the company. But an employer is only "silenced" by the Board, as Harrison puts it, when the Board orders the employer not to engage in certain activities or make certain statements. The Board's supplemental decision here has no such coercive effect; at most, it threatens that in the future, the Board will find similar company statements to be unlawful as well.[4] Cf. Federal Power Commission v. Hope Gas Co., 320 U.S. 591, 619, 64 S.Ct. 281, 295, 88 L.Ed. 333 (1944) ("where 'the order sought to be reviewed does not of itself adversely affect complainant, but only affects his rights adversely on the contingency of future administrative action,' it is not reviewable.... [R]esort to the courts in these situations is either premature or wholly beyond their province.") (quoting Rochester Telephone Corp. v. United States, 307 U.S. 125, 130, 59 S.Ct. 754, 757, 83 L.Ed. 1147 (1939)).
 
 
 15
 An examination of the result Harrison advocates further illustrates the point. Even if we were to take jurisdiction of this appeal and rule that the Board erred in finding the company's job loss statements unlawful, we could not rescind the Board's outstanding remedial order as that order stands on independent, previously affirmed grounds. Cf. U.S. Marshall's Service, supra. Our ruling on the propriety of the Board's finding would thus be completely advisory in nature; it would have no more direct effect on Harrison than a ruling we might issue tomorrow on a petition for review involving a different company that made similar statements to its employees. To accept Harrison's contention that the Board's finding--essentially a finding "in the air"--has sufficient adverse effect to justify jurisdiction over this appeal would require us to ignore Scofield 's teaching that a charged party may only appeal "remedial orders" levied against it. We are unwilling to expand standing under Sec. 10(f) in this fashion.
 
 
 16
 Perhaps anticipating that we might reject its argument that it is aggrieved by the Board's supplemental decision, Harrison alternatively argues that because the Board has fallen back on its initial remedial order rather than issue a supplemental order, that initial order--which clearly "aggrieves" the company within the meaning of Sec. 10(f)--now constitutes a sufficient jurisdictional predicate for us to review the Board's supplemental findings.
 
 
 17
 This argument, too, must fail. We recognize that the Board has taken advantage of the scope of its previous order to insulate its supplemental findings from review. (In the future, we would be wise to retain jurisdiction on remand in such circumstances to prevent the Board from evading review in this manner.) As a practical matter, however, despite the Board's reference to the initial order in its supplemental decision, that order has little bearing on the Board's supplemental findings. The order does not expressly prohibit the company from making comments similar to the written statements at issue here; it only enjoins the company in a general fashion from making statements which threaten that job loss will result from unionization. See supra note 3. The original order, in short, gives no effect to the Board's supplemental finding.
 
 
 18
 We are in any case constrained by our statutory mandate from reviewing the Board's original order, because it is no longer before us. Harrison has already exercised its prerogative under Sec. 10(f) to have the original order and the findings upon which it was based reviewed. A panel of this court both affirmed the Board's unfair labor practice findings and enforced its remedial order. After initially granting Harrison's petition for rehearing en banc, we partially vacated that opinion, but only that portion relating to the three statements at issue here; we left undisturbed the Board's other findings and enforced those portions of the Board's remedial order which attended them. Thus, the only Board action before us in this appeal is its supplemental decision. Standing alone, that decision has and will have no adverse effect on the company. Harrison's petition for review is therefore
 
 
 19
 DISMISSED.
 
 
 
 [1]
 In a newsletter distributed to employees prior to the election, Harrison issued the following statements:
 Some of Harrison Steel Castings Company's competitors are non-union and some are located in the southern United States where wage rates are traditionally lower, and if we become union the Company may become non-competitive with a resulting loss of business and jobs. This loss of business could come about through increased cost of operation, not due to wage or benefit increases to employees but rather due to the inherent increased cost in operating a union plant. At union companies much time is spent on grievance processing, contract negotiations, and dealing with the Union, which add to the cost of operation, but do not put any benefits in the employee's pocket.
 We will refer to this paragraph of comments in our discussion as the "competitiveness comments." The company also published the following statements in its newsletter:
 If you would be called out on strike by the Union during contract negotiations, such a strike is called an "economic" strike and all employees not reporting to work can be PERMANENTLY REPLACED. A company can not [sic] fire employees for striking but it can "permanently replace" them. Permanent replacements hired for strikers are allowed by law to keep the striker's job even after the strike ends. Thus, employees who go on strike and are replaced have no job to return to when the strike ends.
 In a union company there is the ever present possibility of a strike. Our customers rely upon dependable goods and services, and the risk of a strike may force our customers into looking for alternative suppliers, which could lead to a loss of jobs at our plant. When you consider your vote for or against a union examine that choice in terms of your own personal best interests rather than what is good for the employer.
 We will refer to this second set of comments as the "strike comments".
 
 
 [2]
 The Board's original order prohibited the company from "threatening employees that their designation of a union could result in a loss of jobs and layoffs."
 
 
 [3]
 The Board order had originally enjoined Harrison from threatening employees that "loss of jobs could result from participation in an economic strike."
 
 
 [4]
 It is far from clear that in the future, we would enforce a Board order predicated upon a finding that statements like the competitiveness comments at issue here are violative of Section 8 of the NLRA. While an employer may not threaten to cut jobs in retaliation for the success of a union in a representation election, "[t]o predict a[n] [adverse economic] consequence that will occur no matter how well disposed the company is toward unions is not to threaten retaliation." NLRB v. Village IX, Inc., d/b/a Shenanigans, 723 F.2d 1360, 1367 (7th Cir.1983). Statements that are "carefully phrased on the basis of objective fact to convey an employer's belief as to demonstrably probable consequences beyond his control," NLRB v. Gissel Packing Co., 395 U.S. 575, 618, 89 S.Ct. 1918, 1942, 23 L.Ed.2d 547 (1969), are not only permissible, but may be desirable, to the extent that they accurately educate employees as to the possible economic consequences of unionization. See generally, Shenanigans, 723 F.2d at 1367-68