**NATIONAL LABOR RELATIONS
BOARD, Petitioner,
Truck Drivers Union Local 413, etc.,
Intervenor,**

v.

**BRUSH–MOORE NEWSPAPERS, INC.,
d/b/a The Portsmouth Times,
Respondent.**

**No. 18341.**

United States Court of Appeals
Sixth Circuit.

July 1, 1969.

---

810

---

Nan Bases, N. L. R. B., Washington, D. C., for petitioner, Arnold Ordman, Gen. Counsel, Dominick L. Manoli, Assoc. Gen. Counsel, Marcel Mallet-Prevost, Asst. Gen. Counsel, Lawrence M. Joseph, Atty., N. L. R. B., Washington, D. C., on brief.

William J. Rosenthal, Baltimore, Md., for respondent, Shawe & Rosenthal, Earle K. Shawe, Lawrence S. Wescott, Baltimore, Md., Vodrey & Shay, Jackman S. Vodrey, Liverpool, Ohio, on brief.

Before CELEBREZZE, McCREE and COMBS, Circuit Judges.

McCREE, Circuit Judge.

This is a petition for enforcement of an order of the National Labor Relations Board. The Board found that Brush-Moore Newspapers, Inc., respondent, violated Sections 8(a)(1) and 8(a)(5) of the Act by refusing to bargain with Truck Drivers Local 413, hereinafter re-

ferred to as "the Union".[1] The questions presented are whether enforcement should be denied because the Board failed to grant respondent a hearing at the unfair labor practice proceeding, and, if not, whether substantial evidence on the record as a whole supports the Board's determination that certain persons working for respondent are employees and not independent contractors for purposes of collective bargaining.

Respondent is an Ohio corporation engaged in the publication and distribution of The Portsmouth Times, a daily newspaper. On December 2, 1965, the Union filed a petition seeking to represent some of the workers who distribute respondent's papers. A hearing was held to determine whether these workers are employees or independent contractors and both sides were given the opportunity to introduce evidence and to examine and cross examine the witnesses under oath. On February 23, 1966, the regional director found, on the basis of the record of this hearing, that certain of respondent's distributors are employees and he defined an appropriate bargaining unit[2] and directed that an election be conducted. On March 18, the Board denied respondent's request for review of this decision on the ground that it raised no substantial issues. Thereafter, an election was held and a majority of the members of the unit designated the Union as their bargaining representative. Subsequently, the Union was certified by the Board.

On May 2, 1966, the Union asked respondent to bargain. When this request was refused, the regional director issued a complaint and scheduled a hearing before a trial examiner. Following respondent's denial of the material portions of the complaint, the general counsel, contending that respondent's answer was a sham, moved the Board for summary judgment. The Board then transferred the case from the Trial Examiner to itself and ordered respondent to show cause why the motion should not be granted. After receiving respondent's statement in opposition to the motion, the Board granted summary judgment against respondent on December 8, 1966 and ordered it to bargain with the Union. This petition for enforcement of the order followed.

Initially, respondent contends that its statutory right to a hearing on the unfair labor practice charge is unconditional. We do not agree. It is clear that 29 U.S.C. § 160(b) should not be read to require an evidentiary hearing if there are no issues of fact to be resolved. Macomb' Pottery Co. v. NLRB, 376 F.2d 450 (7th Cir. 1967); NLRB v. Union Brothers, Inc., 403 F.2d 883 (4th Cir. 1968). Furthermore, it is also clear that the Board is not required to grant a hearing to reconsider factual issues resolved at an earlier, related representation hearing unless newly discovered or previously unavailable evidence is presented. Pittsburgh Plate Glass Co. v. NLRB, 313 U.S. 146, 61 S.Ct. 908, 85 L.Ed. 1251 (1941), reh. denied, 313 U.S. 599, 61 S.Ct. 1093, 85 L.Ed. 1551 (1941); NLRB v. Union Brothers, Inc., supra; NLRB v. Tennessee Packers, Inc., Frosty Morn Division, 379 F.2d 172 (6th Cir. 1967), cert. denied, 389 U.S. 958, 88 S.Ct. 338, 19 L.Ed.2d 364 (1967); NLRB v. KVP Sutherland Paper Co., Sutherland Division, 356 F.2d 671 (6th Cir. 1966). Cf. Amalgamated Clothing Workers of America v. NLRB, 124 U.S. App.D.C. 365, 365 F.2d 898 (1966).

1. Local 413 is affiliated with the International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America. The decision and order of the Board are reported at 161 NLRB No. 141 (1966).

2. This unit consists of respondent's throwoff drivers, route tube distributors and newsstand distributors. Throw-off drivers deliver primarily to individual subscribers between towns by throwing the papers into their yards or driveways. Route tube distributors deliver to individual subscribers between towns by inserting papers in tubes at the subscribers' homes. Newsstand distributors deliver papers to the newsstands in Portsmouth.

■ The only factual issue raised by respondent before the Board, or in its brief to this court, is whether the workers in question are employees or independent contractors within the meaning of the Act. Although respondent now asserts that it is prepared to offer evidence not available at the time of the representation proceeding before the hearing officer, it made no such claim in its statement opposing the motion for summary judgment. Furthermore, the only evidence offered then which appears to have been unavailable concerns several subsequent changes in its distribution routes. The Board found, however, that respondent had made no showing that the asserted changes would require any modification of the original determination that the persons within the defined bargaining unit are employees and not independent contractors. A review of the record convinces us that this finding is supported by the evidence and, consequently, no factual issue existed at the time the Board granted summary judgment against respondent. Under these circumstances, we hold that the Board's action was proper.

■ Respondent's contention that enforcement should be denied because the motion for summary judgment was made to the Board before the proceeding was transferred from the Trial Examiner is without merit. It is clear that the Board had the authority to transfer the case to itself to avoid unnecessary delay. 9 C.F.R. § 102.50. Respondent has not been prejudiced by the fact that the motion was addressed to the wrong forum and no purpose would be served by denying enforcement on this technical ground.

The second question requires consideration of the evidence supporting the Board's finding that the distributors are employees and not independent contractors. Common law agency principles are controlling, NLRB v. United Insurance Co., 390 U.S. 254, 256, 88 S.Ct. 988, 19 L.Ed.2d 1083 (1968), and some of the relevant factors are set forth in RESTATEMENT (SECOND) OF AGENCY § 220 (1957):

§ 220. Definition of Servant

(1) A servant is a person employed to perform services in the affairs of another and who with respect to the physical conduct in the performance of the services is subject to the other's control or right to control.

(2) In determining whether one acting for another is a servant or an independent contractor, the following matters of fact, among others, are considered:

(a) the extent of control which, by the agreement, the master may exercise over the details of the work;

(b) whether or not the one employed is engaged in a distinct occupation or business;

(c) the kind of occupation, with reference to whether, in the locality, the work is usually done under the direction of the employer or by a specialist without supervision;

(d) the skill required in the particular occupation;

(e) whether the employer or the workman supplies the instrumentalities, tools, and the place of work for the person doing the work;

(f) the length of time for which the person is employed;

(g) the method of payment, whether by the time or by the job;

(h) whether or not the work is a part of the regular business of the employer;

(i) whether or not the parties believe they are creating the relation of master and servant; and

(j) whether the principal is or is not in business.

Furthermore, as stated by the court in NLRB v. A. S. Abell Co., 327 F.2d 1 (4th Cir. 1964):

Resolution of the question must depend largely upon the peculiar facts of each case. Moreover, no single factor is controlling and the totality of the circumstances must be considered. 327 F.2d at 4–5.

Applying these principles, we determine that the Board's finding is supported by substantial evidence on the record as a whole. Universal Camera Corp. v. NLRB, 340 U.S. 474, 71 S.Ct. 456, 95 L.Ed. 456 (1951). Among the characteristics of the relationship of the distributors to respondent which support this conclusion are: the contracts provided that the distributor shall service and maintain route tubes supplied by respondent and it can fairly be inferred that respondent can insist on delivery to these tubes; the contracts prohibit the distributors from selling any other newspaper or advertising matter without respondent's permission; although some customers make advance payments to respondent for their subscriptions, the distributors are not allowed the use of this money in advance but instead are credited each week with an amount equal to the customer's weekly subscription rate; the job does not require the services of one who is highly skilled; in addition to the route tubes, respondent provides a room and brown paper for wrapping the newspapers;[3] the employment is intended to be of indefinite duration, not short-term, and is a necessary part of respondent's regular business; and respondent may terminate a distributor's employment without notice if he fails to comply with the terms of his contract.

 The relationship between the distributors and respondent is described in detail in the regional director's decision.[4] Although there are perhaps as many indicia characteristic of independent contractor status as there are of employee, we should not upset the Board's choice between two fairly conflicting views. As the Supreme Court stated in NLRB v. United Insurance Co., *supra:*

> [T]he Board's determination was a judgment made after a hearing with witnesses and oral argument had been held and on the basis of written briefs. Such a determination should not be

set aside just because a court would, as an original matter, decide the case the other way. As we said in Universal Camera Corp. v. NLRB, 340 U.S. 474, 71 S.Ct. 456, 95 L.Ed. 456, "Nor does it [the requirement for canvassing the whole record] mean that even as to matters not requiring expertise a court may displace the Board's choice between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it *de novo.*" 340 U.S., at 488, 71 S.Ct., at 465. Here the least that can be said for the Board's decision is that it made a choice between two fairly conflicting views, and under these circumstances the Court of Appeals should have enforced the Board's order. 390 U.S. at 260, 88 S.Ct., at 991.

A decree will be entered enforcing the order of the Board.

## APPENDIX

The Regional Director's decision states in part:

All drivers have executed contracts with the Employer. The throw off drivers, tube distributors, and newsstand distributors execute the same contract wherein they are referred to as and are hereinafter referred to as "motor route operators" while the route contractors execute a different contract. These contracts were submitted into evidence as Employer's Exhibits #1 and #2, respectively.

The contracts signed by the motor route operators are preprinted standard forms with blank spaces for the Employer's name, the operator's name, the wholesale rates, the territory designation, the amount of security required and the execution date. The contracts have no stated termination date but may be terminated by either party on 30 days' written notice or by the Employer without notice if the motor route operator

---

3. Although it does not appear that it is required, the throw-off distributors customarily wrap their papers.

4. *See* Appendix.

fails to comply with the terms of the Agreement.

The contracts provide that the operators shall buy papers at wholesale rates set by the Employer and sell them at retail rates set by the Employer in the assigned territory, which is geographically defined; that he shall receive the papers at such point of delivery and at such time of day as may be specified by the Employer and to promptly deliver the same; that he shall drop off bundles to carriers and retail newsdealers along his route; that he shall keep the route list, which is the sole and exclusive property of the Employer, complete and up to date at all times; that he shall not show or deliver the route list or disclose any names on it to any person other than the Employer without written permission and to furnish the Employer a complete list at any time the Employer may request; that the Employer at its discretion shall supply route tubes, stakes and clamps and the operator shall service and maintain the same; that he shall do all in his power to promote and extend the sales in his territory; that the Employer at its option, may use solicitors to increase sales in his territory; that any other employment he may have shall not interfere with his obligations under the contract and that he shall not sell or deliver any other newspaper or advertising matter without written permission; that the contract is not assignable and that he shall carry adequate liability insurance on any motor vehicles he uses. The agreement also contains a statement saying that the operators are not employees of the Employer.

Under this agreement, the operators purchase the papers at wholesale rates from the Employer and resell them to individuals, newsstands or carriers at established rates, retaining as earnings the amounts realized on the sales, less expenses. The resale rates set by the Employer are uniform as to the type of customer, i. e., individual subscriber, newsstand, city carriers or suburban carriers. The wholesale rate is determined by the Employer and is arrived at by considering the length of the route, the number and types of customers, and the number of bundles delivered for the Employer for which the operator receives no direct compensation. The Employer does not consult the operator as to the wholesale rate. In this regard, the record shows the Employer conducted a reevaluation of certain routes last year and reduced the rates without consulting the operators. In addition, the operators are given an extra allowance of seven cents a mile when floods or other conditions cause detours and in at least one instance an operator was given an extra allowance because the large size of the paper required the use of a second truck.

The throw off operators receive their papers at the Employer's plant where they wrap their papers in the mail room with wrappers supplied by the Employer. The tube operators do not wrap their papers and only three of them pick up their papers at the plant. The remaining tube operators pick up their papers in outlying towns where they are dropped by other operators. The Employer does not accept returns from throw off and tube operators. It does accept returns, however, from the newsstand operators. Collections are made by the operators from their customers in any manner they choose.

While the Employer produced evidence that it does not require the operators to service customers which they did not desire, the record also contains evidence of at least one instance where an operator at first refused to service a customer located three blocks off his route until he was informed by the Employer that his contract required him to service such a customer and that he had to do it.

The Employer annually conducts a campaign in its papers to sell magazines along with the newspapers. The magazines are delivered by mail, but the operators are billed for the magazines by the Employer and, therefore, must collect for them from their customers. For this service the operators are allowed to retain one cent a week out of the 20 cents they collect for such magazines.

The operators are required to pay the Employer each week for the previous week's papers. Some subscribers make advance payments to the Employer for their subscriptions. However, instead of turning this money over to the operator, the Employer credits his weekly bill at 42 cents (the weekly subscription rate) for each customer paid in advance. The operators are also given the same 50 percent discount given all other employees for personal advertisements placed in the Employer's paper. The operators furnish their own vehicles and help, if any, and the Employer does not make any deductions for Social Security or withholding taxes for the operators.

\* \* \* \* \* \*

On the basis of the above, and the record as a whole, I am satisfied that the three types of motor route operators, i. e., throw off drivers, tube distributors, and newsstand distributors, are not independent contractors. I am aware that the evidence discloses certain factors which indicate an independent contractor status, but the presence of these factors alone do not establish such status. Thus, I am not persuaded by and do not regard as controlling the fact that a written agreement provides the basis for the route operator relationship, that the agreement states that the operators are not employees of the Employer, that the operators provide their own equipment or that the Employer does not make the usual payroll deductions for operators.

The result to be accomplished through the operator arrangement is the circulation of the Employer's newspaper for resale to the general public. In accomplishing this result, the operators do not appear to be independent businessmen whose earnings are determined by personal investment and expenditures, self-made policies and market conditions. The operators have no proprietary interest in their routes and cannot assign them. They must sell their papers at a price set by the Employer in the territory assigned in the contract. They are not permitted to have any other employment that will interfere with their contractual duties and are not allowed to sell or distribute other newspapers or advertising matter. The Employer retains advance payments made by subscribers and thereby deprives the operators the use of such funds. The risk of loss is another factor to be considered in determining whether the status is that of employer-employee or that of an independent contractor. Here, the newsstand operators' risk of loss is minimized by the Employer's acceptance of returns for credit. As to the throw off operators and tube operators, the record shows that the Employer pays them a mileage fee to compensate for unusual conditions requiring detours from their routes and on at least one occasion granted an extra allowance because the large size of the paper required the operator to use a second truck. Additionally, the Employer unilaterally sets the operators' individual wholesale rates by considering their expenses in the number of miles driven, the type of customers they service and the number of bundles they deliver for the Employer and for which they receive no direct compensation.

The record shows that the Employer also exercises a measure of control over the manner and means by which the operators distribute their papers. Thus, the throw off operators are required to wrap their papers in wrappers supplied by the Employer, and the tube operators are required to place their papers in tubes supplied by the Employer and to maintain such tubes. They are restricted from distributing other newspapers and advertising materials, from engaging in outside employment that will interfere with their newspaper delivery duties and are required to collect for magazines sold by the Employer in a combination newspaper-magazine package offer to subscribers. Additionally, the Employer has the right to terminate the contract without notice on failure of the operator to comply with its terms.

Accordingly, on these facts and the record as a whole, I conclude that the motor route operators, i. e., throw off drivers, tube distributors and newsstand

distributors, are employees and not independent contractors. Contrary to the contentions of the Employer, the record shows that the Employer has retained substantial control over the manner and means as well as the result of the operators' work. Eureka Newspapers, Inc., 154 NLRB No. 102; The Vindicator Printing Company, 146 NLRB 871; Lindsay Newspapers, Inc., 130 NLRB 680, enforced as modified 315 F.2d 709; 52 LRRM 2780.