440 F.2d 61
 CONCRETE MATERIALS OF GEORGIA, INC., Petitioner,
v.
NATIONAL LABOR RELATIONS BOARD et al., Respondents.
NATIONAL LABOR RELATIONS BOARD, Petitioner,
v.
INTERNATIONAL UNION OF OPERATING ENGINEERS, LOCAL 465, AFL-CIO, and Laborers' International Union of North America, AFL-CIO, Local 884, Respondent.
 No. 29559.
 No. 29606.
 United States Court of Appeals, Fifth Circuit.
 March 17, 1971.
 
 Robert A. Gwinn, Robert G. Mebus, Dallas, Tex., for petitioner Concrete Materials of Georgia, Inc.
 Joseph Jacobs, Atlanta, Ga., for International Union etc.
 Marcel Mallet-Prevost, Asst. Gen. Counsel, Warren M. Davison, Atty., N.L. R.B., Washington, D.C., Walter C. Phillips, Regional Director, N.L.R.B., 10th Region, Atlanta, Ga., for National Labor Relations Board.
 Before RIVES, GOLDBERG and MORGAN, Circuit Judges.
 LEWIS R. MORGAN, Circuit Judge:
 
 
 1
 This matter arises out of a petition brought by Concrete Materials of Georgia, Inc. (hereafter, the Company) to review and set aside an order of the National Labor Relations Board (hereafter, the Board) and a petition to enforce the same order brought by the Board, which were consolidated by order of this court on May 18, 1970. The single issue presented is whether the charging party in an unfair labor practice proceeding is entitled to an evidentiary hearing on its objections to a proposed settlement agreement between the Regional Director of the Board and the party against whom the charge was lodged. We deny the Company's petition to review and set aside the order and grant the Board's petition to enforce.
 
 
 2
 On August 4, 1969, the International Union of Operating Engineers, Local 465, and Laborers' International Union of North America, Local 884, (hereafter, the Unions) struck Concrete Materials, Inc., in Charlotte, North Carolina, as the result of a contract dispute. Shortly thereafter, the Unions began picketing Concrete Materials of Georgia, Inc., a wholly owned subsidiary of Concrete Materials, Inc., in Atlanta, Georgia, and at various construction sites at which its products were being used. On August 6, 1969, the Company filed charges with the Board's Regional Office alleging that the Unions had engaged in unfair labor practices within the meaning of Section 8(b) (4) (i) (ii) (B) of the National Labor Relations Act, as amended, (hereafter, the Act), 29 U.S.C. § 158(b) (4) (i) (ii) (B), by exerting coercive pressure on certain neutral employers for the purpose of coercing those employers to cease doing business with the Company. On August 28, 1969, the Regional Director issued an unfair labor practice complaint based on these charges.
 
 
 3
 Following the issuance of the complaint, the Unions submitted a proposed formal settlement agreement to the Regional Office, which provided for a cessation of the conduct alleged to be unlawful in the complaint and the normal affirmative action required by the Board to remedy the alleged violations and waived further proceedings before the Board. The agreement also provided that the Unions, without admitting the commission of any unfair labor practice, consented to the entry of a Board order and an enforcement decree by an appropriate Court of Appeals and that the agreement could not be used as evidence in any other judicial or administrative proceeding.
 
 
 4
 Copies of the proposed settlement agreement were sent to the Company with an accompanying letter from the Regional Office indicating approval of the agreement, but inviting the Company to file a written statement of its objections to the proposed settlement agreement if it did not agree. On November 21, 1969, the Company returned unexecuted the proposed formal settlement agreement and detailed its objections to the agreement in an accompanying letter. The Company objected principally to the failure to provide for an evidentiary hearing upon the matters set out in the Complaint and Notice of Hearing, which the Company claimed it was entitled to under Leeds & Northrup Company v. N.L.R.B., 3 Cir., 1966, 357 F.2d 527, and Marine Engineers' Ben. Ass'n. v. National Labor Rel. Bd., 3 Cir., 1953, 202 F.2d 546, cert. den. 346 U.S. 819, 74 S.Ct. 32, 98 L.Ed. 345.[1] In support of this objection, the Company indicated that it was contemplating a private damage action against the Unions under Section 303 of the Act, 29 U.S.C. § 187, as amended (1965), and that it expected to rely on the Board's finding that the Unions had violated Section 8(b) (4) of the Act as res judicata as to the Unions' liability in its action under Section 303. See Painters Dist. Coun. No. 38, etc. v. Edgewood Contracting Co., 5 Cir., 1969, 416 F.2d 1081. In support of its insistence on an oral hearing, the Company went on to contend that a full evidentiary hearing before the Board would reduce the expense of taking oral depositions and producing live witnesses at the trial of the Section 303 action in North Carolina and that much of the evidence was exclusively in the hands of the Regional Director and that it would be impractical and an expensive duplication of the efforts of the Regional Director to require the Company to conduct its own investigation and seek to uncover evidence already available to the Regional Director.
 
 
 5
 After considering the Company's objections, the Board held that the objections were without merit and that it would effectuate the purposes of the Act to adopt the terms of the settlement agreement, which it thereupon incorporated in its order. More specifically, the Board held that "an evidentiary hearing is not required simply because objections to the settlement agreement were made after the issuance of the complaint" and that since "the Charging Party's objections do not raise disputed material issues of fact which must be determined after a hearing, an evidentiary hearing would serve no useful purpose," following the practice set forth by the Board in Roselle Shoe Corporation, 135 N.L.R.B. 472, enforced, Textile Workers Union of America, A.F.L.-C.I. O. v. N.L.R.B., 114 U.S.App.D.C. 295, 315 F.2d 41 (1963). Furthermore, it held that "the Board is not compelled to conduct a hearing or include additional material as part of the record simply because the Charging Party contemplates prosecuting a damage suit against the Respondent Unions pursuant to Section 303 of the Act and desires to rely on such government evidence and material in support of its private litigation."
 
 
 6
 The issue of whether the charging party is entitled to an evidentiary hearing on its objections to a proposed settlement agreement between the charged party and the Board's Regional Director has never been expressly decided in this Circuit[2] and has led to disagreements among several circuits.
 
 
 7
 In Marine Engineers' Ben. Ass'n. No. 13 v. National Labor Rel. Bd., 3 Cir., 1953, 202 F.2d 546, cert. den. 346 U.S. 819, 74 S.Ct. 32, 98 L.Ed. 345, the first case to consider the issue here presented, the Third Circuit held that a charging party is entitled to an evidentiary hearing on its objections to a proposed formal settlement agreement, reasoning that since the charging party is a party aggrieved under Section 10 of the Act and thus in a position to contest the correctness of the Board's order by means of a petition to review directed to a Court of Appeals and because the Board's own Rules and Regulations permit the charging party to be treated as a party, rather than an intervenor, from the outset of the proceedings, § 102.8, 29 C.F.R. § 102.8, the charging party is an "interested" party within the meaning of Section 5(b) of the Administrative Procedure Act, 5 U.S.C.A. § 554(c) (1967). Section 5(b) provides that "[t]he agency shall give all interested parties opportunity for — (1) the submission and consideration of facts, arguments, offers of settlement, or proposals of adjustment when time, the nature of the proceeding, and the public interest permit; and (2) to the extent that the parties are unable so to determine a controversy by consent, hearing and decision on notice and in accordance with sections 556 and 557 of this title." Section 6(a), 5 U.S.C.A. § 555(b) (1967), goes on to provide that "* * * [a] party is entitled to appear in person * * * in an agency proceeding." On this basis, the Court concluded:
 
 
 8
 Our best judgment is that the charging party, after complaint is issued, does have some standing. The Board may refuse to do anything about his complaint as already indicated. But once it does, and once it goes to the extent of filing a complaint, then we think that he is entitled to have a chance to be heard as the Administrative Procedure Act requires. He has a right to object if after hearing he does not like the result. But he certainly has nothing on which to base his objections unless there is a hearing and a record is made so that the court has something to go on.
 
 
 9
 * * * * * *
 
 
 10
 In other words, we conclude that the petitioners are right in this case; that they are entitled to a hearing to present whatever facts they can find to support their position. And if they believe the Board to be wrong after it makes an order they can get court review both on the questions of fact and on the questions of law. 202 F.2d at 549-550. (Footnote omitted.)[3]
 
 
 11
 In 1961, the Court of Appeals for the District of Columbia, in Textile Workers Union of America, A.F.L.-C.I.O. v. N.L. R.B., 111 U.S.App.D.C. 109, 294 F.2d 738 (1961), enforced, 114 U.S.App.D.C. 295, 315 F.2d 41 (1963), found itself disinclined to bring a similar case "within the broad scope * * * of Marine Engineers and hold that because it was the charging party the Union, without more, was entitled to the hearing it sought". Id. 739. Relying heavily on Sections 102.8[4] and 101.9[5] of the Board's Rules and Regulations, the Court held that "[r]egard must be had to the particular circumstances bearing upon whether or not there would be an abuse of discretion in entering a consent order without a hearing notwithstanding detailed and substantial objections and requests for a hearing thereon," Id. 741, and that, since there was no indication in the record that the Board even considered the objections, "the order cannot stand without either (1) a reasonable opportunity for the Union to be heard on its objections or (2) a presentation on the record of reasons for acceptance of the stipulation as the basis for the order notwithstanding the Union's objections — a presentation which in light of those objections would enable a reviewing court to make an intelligent decision as to whether the Board's action was within the broad discretion we recognize the Board possesses". Id. 741. On remand, the Board amended its order by inserting the reasons upon which it based its acceptance of the terms of the settlement agreement over the charging party's objections. The order, as amended, was subsequently enforced. 315 F.2d 41, 42.
 
 
 12
 The Second Circuit, on the other hand, has held in Local 282, International Bro. of Teamsters, etc. v. N.L.R.B., 2 Cir., 1964, 339 F.2d 795, that the charging party is not under any circumstances entitled to an evidentiary hearing on its objections to a proposed settlement agreement as a matter of right. In doing so, the Court took the position that, even though the charging party is made a party to an unfair labor practice proceeding without the necessity of intervention by virtue of § 102.8 of the Board's Rules and Regulations, supra, n. 3, and an aggrieved party entitled to seek review from adverse Board determinations under Section 10(f) of the Act, the charging party is neither expressly granted the right to a hearing in an unfair labor practice case under Section 10(b) of the Act nor is an "interested" party within the meaning of Section 5 of the Administrative Procedure Act, supra, so as to be entitled to a hearing as a matter of right under that Act.[6] This view is bottomed on the proposition that "where reliance is placed on a legislatively created interest, a person can make the requisite showing [of interest] (as distinguished from the lesser one required to be a `person aggrieved') only if the statute can fairly be construed as vesting him with a new private right," 339 F.2d at 800,[7] and the holding of Amalgamated Utility Woorkers v. Consolidated Edison Co., 309 U.S. 261, 60 S.Ct. 561, 84 L.Ed. 738 (1940), that the National Labor Relations Act did not provide a private administrative remedy and thus provided no private rights to victims of unfair labor practices.[8]
 
 
 13
 In the most recent case dealing with the question of the charging party's right to an evidentiary hearing on his objections to a proposed settlement agreement, Leeds & Northrup Company v. N. L. R. B., 3 Cir., 1966, 357 F.2d 527, the Third Circuit adhered to the approach it had taken in Marine Engineers, supra, in 1953. In doing so, the court said:
 
 
 14
 True, the Board is exclusively all powerful in its proper sphere. (Citing Amalgamated Utility Workers v. Consolidated Edison Co., supra.) Likewise, the Board and its Agents act in the public interest. However, not exclusively so, or in utter disregard of private interests, be they individual or collective. [Citing International Union, etc., Local 283 v. Scofield, 382 U.S. 205, 86 S.Ct. 373, 15 L.Ed.2d 272 (1965)]. At 532.
 
 
 15
 Leeds & Northrup also seemingly expanded the holding in Marine Engineers, supra, so as to prevent the settlement of any unfair labor practice case without the consent of the charging party. The court said:
 
 
 16
 * * * Considering Section 3(d) of the Act in the light of section 101.9 of the regulations, it appears that neither Congress nor the Board, by statute or regulation, intended to vest in the Board's agents, the Regional Director and the General Counsel, power and authority to settle complaints after their issuance without the consent of all parties, including the charging party.
 
 
 17
 * * * * * *
 
 
 18
 While it is true that the formal objections to the settlement agreement, which by its terms effected a withdrawal of the complaint, were considered by the Regional Director and rejected, he made factual findings without affording an opportunity to the aggrieved charging party to prove or amplify its grievances, which opportunity might very well have caused the complaint to prevail and ultimately reach the Board for adjudication as contemplated by the Labor Management Relations Act. The mere consideration on formal pleadings is not tantamount to a hearing on the merits, as contended by respondent. The charges * * * were such matters of fact which warranted a full hearing. * * * Anything less must in effect be arbitrary and capricious. 357 F.2d at 535-536.
 
 
 19
 As these cases indicate, the resolution of the issue of whether the charging party is entitled to an evidentiary hearing on his objections to a proposed settlement agreement is dependent on the relative positions of the parties in an unfair labor practice proceeding, as provided for by Congress in the National Labor Relations Act, supra. In Amalgamated Utility Workers v. Consolidated Edison Co., supra, the Supreme Court held that the charging party had no right to institute contempt proceedings in the Court of Appeals to compel compliance with a decree enforcing a Board order on the ground that the Board has been given exclusive enforcement rights under the Act. It said:
 
 
 20
 * * * [I]t is apparent that Congress has entrusted to the Board exclusively the prosecution of the proceeding by its own complaint, the conduct of the hearing, the adjudication and the granting of appropriate relief. The Board as a public agency acting in the public interest, not any private person or group, not any employee or group of employees, is chosen as the instrument to assure protection from the described unfair conduct in order to remove obstructions to interstate commerce.
 
 
 21
 * * * * * *
 
 
 22
 Again, the Act gives no authority for any proceeding by a private person or group, or by any employee or group of employees, to secure enforcement of the Board's order. The vindication of the desired freedom of employees is thus confided by the Act, by reason of the recognized public interest, to the public agency the Act creates. 309 U.S. at 265, 266, 60 S.Ct. at 563, 564.
 
 
 23
 The Court went on to take the position that the National Labor Relations Act does not create "an administrative remedy for private wrongs," Id. 268, 60 S.Ct. 565, and that the right afforded a private person under Section 10(f) of the Act, 29 U.S.C.A. § 160(f), "is an opportunity afforded to contest a final order of the Board not to enforce it." Id. 266, 60 S.Ct. at 564.
 
 
 24
 At the same time, the Court in International Union, etc., Local 283 v. Scofield, supra, has held that either the charged party or the charging party who is successful before the Board may intervene as of right in any review proceedings before the Court of Appeals. In discussing the right of a charging party to intervene, the Court said:
 
 
 25
 In prior decisions, this Court has observed that the Labor Act recognizes the existence of private rights within the statutory scheme. (Footnote omitted). These cases have, to be sure, emphasized the "public interest" factor. To employ the rhetoric of "public interest," however, is not to imply that the public right excludes recognition of parochial private interests * * *.
 
 
 26
 382 U.S. at 218, 86 S.Ct. at 382.
 
 
 27
 * * * * * *
 
 
 28
 In short, we think that the statutory pattern of the Labor Act does not dichotomize "public" as opposed to "private" interests. Rather, the two interblend in the intricate statutory scheme. (Footnote omitted.) Nor do we think that our holding in Amalgamated Util. Workers, 309 U.S. 261, 60 S.Ct. 561, 84 L.Ed. 738, casts doubt on these notions. The Court there held that private parties who initiated unfair labor practice charges may not prosecute a contempt action against the charged party in the court which enforces the Labor Board order. (Footnote omitted.) * * * We find nothing inconsistent in denying the right of a private party to institute a contempt proceeding — where the Board's expertness in achieving compliance with orders is challenged — and, on the other hand, in permitting intervention in a proceeding already in the court for decision. * * *
 
 
 29
 382 U.S. at 220, 221, 86 S.Ct. at 383.
 
 
 30
 From these cases it is clear that the rights of the various persons involved in an unfair labor practice proceeding before the Board are to be determined with reference to the overall legislative scheme imposed by Congress in the Act. International Union, etc., Local 283 v. Scofield, supra, at 276, 86 S.Ct. 373. And that the Labor Board is constituted to adjudicate the matters before it in a manner different from most other administrative agencies. Amalgamated Utility Workers v. Consolidated Edison Co., supra, 309 U.S. at 268, 269, 60 S.Ct. 561. Instead of adjudicating disputes between private persons who invoke its jurisdiction and represent their own interests before it, as do most of our courts and administrative agencies, the National Labor Relations Board adjudicates disputes between its Regional Directors, as represented by the General Counsel, and the person charged with an unfair labor practice under the Act. The person who has been wronged merely initiates the proceeding by bringing a charge, he does not prosecute the violator before the Board. Under this scheme, the General Counsel represents the public interest in preventing the interference to interstate commerce caused by unfair labor practices, and, at the same time, the private interest of the charging party to be free from the harm to his interests caused by unfair labor practices. The role of the charging party is thus rendered ambiguous. The dispute, at least in the technical adjudicative sense, is between the Regional Director and the charged party, and yet the charging party is allowed to be present as a party under Board rules and to participate fully in the adjudication. Similarly, the results of this adjudicative process do not inure directly to the charging party's benefit; while his dispute with the charged party is resolved, he cannot enforce the resolution, but only contest it if he finds it unsatisfactory. From this, the presence of the charging party in the adjudication can be explained as an opportunity afforded the charging party to insure that his interests in the dispute will at least be considered before the matter is resolved.
 
 
 31
 Under this analysis, it is clear that the charging party has the right to contest any proposed settlement between the Regional Director and the charged party both by objecting to it before the Board and by petitioning for review if the Board enters an order over his objection based upon the agreement. To insure that the charging party's objections are considered by the Board, we feel that the charging party must be afforded (1) an evidentiary hearing on any material issues of disputed fact presented by his objections, see N. L. R. B. v. Brush-Moore Newspapers, Inc., 6 Cir., 1969, 413 F.2d 809, 811, cert. den. 396 U.S. 1002, 90 S.Ct. 555, 24 L.Ed.2d 495; and (2) a presentation on the record of reasons for acceptance of the settlement agreement as the basis for the order notwithstanding his objection. See Textile Workers Union of America, A.F.L.-C.I.O. v. N. L. R. B., supra. Since the Company here failed to present any material issues of disputed fact in its objection to the settlement agreement, it was not entitled to an evidentiary hearing. Furthermore, the Board's order adequately indicates its reasons for accepting the proposed settlement agreement as a basis for the order notwithstanding the Company's objection so as to enable this Court to review the Board's exercise of discretion in entering the order.[9]
 
 
 32
 The Company's objection to the settlement agreement was based principally upon the fact that the order envisioned by the agreement would not be res judicata on the issue of liability in the Company's contemplated action under Section 303 of the Act. The Company argues in essence that it would be inefficient, expensive and duplicative for the Company to bear the burden of proving the Union liable on the secondary boycott charge after the Regional Office had conducted its investigation of the Company's charges, caused a complaint to be issued, and prepared its case against the Union and that, consequently, the Board ought to be required to hold a full evidentiary hearing on the merits and issue an order containing factual findings the Company could use with binding effect in the subsequent Section 303 suit. However, there is no requirement that the Board, or for that matter the taxpayers of this nation, provide such services free of charge upon request to private litigants. As for the Company's objection to the remedial features of the order, we note that there is nothing to indicate that the measures provided for in the order do not fully remedy the effects of the alleged unlawful conduct. We therefore find no reason to hold that the Board abused its discretion by holding that it would effectuate the purposes of the Act to adopt the terms of the settlement agreement.[10]
 
 
 33
 The petition to review and set aside the order of the National Labor Relations Board is denied; the petition to enforce is granted.
 
 
 34
 Enforced.
 
 
 
 Notes:
 
 
 [1]
 The Company also objected to certain language in the agreement providing for the cessation of the complained of activity, but it has not asserted this objection here
 
 
 [2]
 The issue presented in this case was previously presented to this Court in Edwards Transportation Company v. N. L. R. B., 5 Cir., 1971, 437 F.2d 502. However, this case was disposed of under Local Rule 21 of this Court, which casts doubt on its value as precedent
 
 
 [3]
 For law review comment on this issue, see Note, "NLRB Settlement Agreements — Right of a Charging Party to an Evidentiary Hearing," 20 SW.L.J. 901 (1966); Note, "Labor Law: Right of a Person Filing an Unfair Labor Practice Charge to a Hearing," 65 Colum.L.Rev. 1104 (1965); Note, "The Charging Party Before the NLRB: A Private Right in the Public Interest," 32 U. Chi.L.Rev. 786 (1965)
 
 
 [4]
 Section 102.8, 29 C.F.R. § 102.8 (1969) provides:
 The term "party" as used herein shall mean the regional director in whose region the proceeding is pending and any person named or admitted as a party, or properly seeking and entitled as of right to be admitted as a party, in any Board proceeding, including, without limitation, any person filing a charge or petition under the act, any person named as respondent, as employer, or as party to a contract in any proceeding under the act, and any labor organization alleged to be dominated, assisted, or supported in violation of section 8(a) (1) or 8(a) (2) of the act * * *; but nothing herein shall be construed to prevent the Board or its designated agent from limiting any party to participate in the proceedings to the extent of his interest only.
 
 
 [5]
 Section 101.9, 29 C.F.R. § 101.9 (1969) provides:
 (a) Even though formal proceedings have begun, the parties again have full opportunity at every stage to dispose of the case by amicable adjustment and in compliance with the law. Thus, after the complaint has been issued and a hearing scheduled or even begun, the attorney in charge of the case and the regional director afford all parties every opportunity for the submission and consideration of facts, arguments, offers of settlement, or proposals of adjustment, except where time, the nature of the proceeding, and the public interest do not permit.
 (b) All settlement stipulations which provide for the entry of an order by the Board are subject to the approval of the Board in Washington, D. C. If the settlement provides for the entry of an order by the Board, the parties agree to waive their right to hearing and agree further that the Board may issue an order requiring the respondent to take action appropriate to the terms of the adjustment. Usually the settlement stipulation also contains the respondent's consent to the Board's application for the entry of a decree by the appropriate circuit court of appeals enforcing the Board's order.
 * * * * *
 
 
 [6]
 The court defines "interested" as used in Section 5 as "a legally recognized private interest and not simply a possible pecuniary benefit resulting from an agency's enforcement of a public right." 339 F.2d at 800
 
 
 [7]
 Citing L. Singer & Sons v. Union Pac. R. R., 311 U.S. 295, 61 S.Ct. 254, 85 L.Ed. 198 (1940)
 
 
 [8]
 According to the Second Circuit's view, when a charging party seeks review from the Board's denial or relief in an unfair labor practice case as an aggrieved party, or seeks review from what he considers inadequate relief, he is vindicating not a private, but a public right since the General Counsel of the Board cannot seek such review and, otherwise, there would be no means of review in such situations. 339 F.2d at 800
 For a discussion of the "public rights dogma" relied on in Local 282, see Jaffe, "The Public Right Dogma in Labor Board Cases," 59 Harv.L.Rev. 720 (1946).
 
 
 [9]
 Before passing to the subsidiary issue of whether the Board abused its discretion in entering an order based on the settlement agreement, we feel it is necessary to clarify the position we have taken here by commenting on the position taken by the Third Circuit. Specifically, we note our disagreement with the reliance of Marine Engineers' Ben. Ass'n v. National Labor Rel. Bd., supra, on Section 5(a) of the Administrative Procedure Act, supra. As we noted in our discussion of Leeds & Northrup Company v. N.L.R.B., supra, such reliance leads to the position that no settlement agreement can be effectuated by the Board without the consent of the charging party. This, we feel, does violence to the legislative scheme incorporated by Congress in the Act. As we have pointed out, the adjudicative process of the Board is somewhat different from other administrative agencies, and as the Supreme Court has noted in International Union, Local 283 v. Scofield, supra, 382 U.S. at 210, 86 S.Ct. at 377:
 Federal agencies are not fungibles for intervention purposes — Congress has treated the matter with attention to the particular statutory scheme and agency.
 In view of the position taken here, we do not believe that the charging party is an "interested" party whose consent is necessary to effectuate any settlement agreement within the meaning of Section 5(a). Cf. Local 282, International Bro. of Teamsters, etc. v. N.L.R.B., supra.
 
 
 [10]
 It should be noted that "[t]he issue presented for [the Board's] resolution at the settlement proposal stage is not the ultimate decision on the complaint, but rather whether the public interest calls for the acceptance of the settlement". Note, "The Charging Party Before the NLRB: A Private Right in the Public Interest," 32 U.Chi.L.Rev. 786, 799, n. 74 (1965)